754 A.2d 476

Herbert NEWBORN

v.

Donnie NEWBORN.

No. 5074, Sept. Term, 1998.

Court of Special Appeals of Maryland.

June 29, 2000.

66

■■■■■■■■

■■■■■■■■■■■■■■■■■■■■

John H. Doud III, Baltimore, for appellant.

Lynn C. Williamson, Baltimore, for appellee.

Argued before SALMON, EYLER and SONNER, JJ.

SALMON, Judge.

If one spouse suffers personal injury prior to separation, do the proceeds from the settlement of that claim constitute marital property? That is one of the questions that must be answered in this case. Surprisingly, there is no reported opinion in Maryland that has decided that issue. In this case, we shall hold that part of the proceeds from the personal injury settlement are marital and part are not.

The issue had its provenance in a suit for absolute divorce filed by Donnie Newborn ("Ms. Newborn") in the Circuit Court for Anne Arundel County against Herbert Newborn. On March 26, 1998, the lower court, after two days of trial, announced that it would dissolve the Newborns' marriage by granting an absolute divorce. The court, however, held *sub curia* the issue of whether it would make a monetary award. On September 8, 1998, a final judgment of absolute divorce was docketed by the clerk. Fifty-five days later, on October 30, 1998, the trial judge filed an opinion and order granting Ms. Newborn a monetary award in the amount of $50,000. On November 28, 1998, Mr. Newborn filed an appeal to this Court, presenting four questions for our resolution, *viz:*

I. Did the trial court have jurisdiction to make a monetary award?

II. Did the trial court err when it failed to find that the parties had made their own division of the proceeds from the personal injury settlement?

III. Did the trial court err by finding that a portion of the proceeds from a personal injury settlement constituted marital property?

IV. Did the trial court err by finding that the appellee met her burden in proving that a portion of the settlement was marital property?

Ms. Newborn has filed a motion to dismiss this appeal. She contends that the appeal was filed more than thirty days after the judgment of absolute divorce was docketed—and was thus filed too late. That contention has no merit. We will explain why in conjunction with our resolution of appellant's first question.

## I. GENERAL BACKGROUND

The Newborns married on September 6, 1953, when he was seventeen and she was thirteen. Four children were born of the marriage, all of whom are now emancipated adults. The parties permanently separated on August 12, 1996.

For thirty-three years of the forty-five-year marriage, Mr. Newborn worked as a longshoreman affiliated with the Steamship Trade Association of Baltimore.[1] He retired as a longshoreman in November 1997.

Mr. Newborn was involved in a serious automobile accident on March 28, 1978. A car in which he was a passenger was rear-ended by a school bus. He suffered a displaced fracture of the left tibia and fibula; a fractured right pelvis; a dislocated left hip; and an injury to the sciatic nerve that caused a diminished sensation on the right leg below the knee, along with the complete absence of feeling in his right foot. In addition, he experienced urethal trauma.

---

1. Mr. Newborn operated a tavern between 1968 and 1974 and missed two and one-half years of work between 1978 and 1981 due to personal injuries. Otherwise, he worked almost continuously as a longshoreman between 1955 and 1997.

After the accident, Mr. Newborn was homebound for about two years. During part of that time, he used a wheelchair. While he was at home, Ms. Newborn was his sole caretaker.

As a result of the accident, the Newborns filed suit against the driver and owner of the school bus. Included in the suit was a joint claim by the Newborns for loss of consortium. Discovery was conducted, and in June 1981 the defendants' insurer settled with the Newborns for $339,000. A check in that amount was made payable to "Herbert and Donnie Newborn individually, and as Husband and Wife [and their attorneys]." After payment of attorneys' fees and costs, $220,000 remained. The Newborns immediately purchased two automobiles, leaving a $200,000 balance.

Mr. Newborn invested the $200,000 with the Legg Mason investment firm; $190,000 was put in an account in Mr. Newborn's name alone, and $10,000 was invested in Ms. Newborn's name. Between 1981 and August 1996 when the parties separated, the Legg Mason accounts experienced little growth because most of the dividends were spent for family purposes. Moreover, in 1988, Mr. Newborn purchased and registered in his own name a mobile home for $80,000 from Legg Mason funds. As a result of this large purchase, there was only approximately $137,000 in Mr. Newborn's Legg Mason account when the parties separated.

In late 1996 or early 1997, Mr. Newborn was unable to work for several months due to depression. He withdrew money from his Legg Mason account and proceeded to waste $130,000 on gambling and whiskey. By the time he went back to work in the spring of 1997, he had spent all the money he had in his investment account.

### TRIAL JUDGE'S DECISION CONCERNING THE MONETARY AWARD

On March 26, 1998, the evidentiary phase of the case was completed. Ms. Newborn took the position that the $80,000 mobile home and the $130,000 her spouse had dissipated were marital property because their source was monies received

from the personal injury settlement. Not surprisingly, Mr. Newborn took the opposite view and contended that none of the monies or properties that had their origins in the settlement was marital. In the alternative, he contended that the parties had agreed between themselves that the settlement monies should be divided ninety-five percent/five percent—in his favor.

The trial judge wrote a preliminary opinion dated April 2, 1998, in which he recognized that he was presented with an issue of first impression. He acknowledged that Judge Chasanow's concurring opinion in *Blake v. Blake*, 341 Md. 326, 670 A.2d 472 (1996), was not binding because five members of the Court declined to join in the concurring opinion. Nevertheless, he quoted the part of that opinion that said that a settlement of a personal injury claim could result in the injured spouse receiving both non-marital and marital property. *Blake*, 341 Md. at 348–49, 670 A.2d 472. He also quoted the following excerpt:

> Examples of non-marital contributions which flowed from Mr. Blake's inchoate [sic] personal injury claim include the loss of his leg, the pain and suffering attendant thereto, and a loss of earnings for the period after dissolution of the marriage. *See Queen v. Queen*, 308 Md. 574, 587, 521 A.2d 320, 327 (1987). . . . On the other hand, loss of consortium, medical expenses directly or indirectly paid by the marital entity, and lost wages prior to the break-up of the marriage could constitute marital property.

*Id.* at 346–47, 670 A.2d 472.

At that stage, the trial judge did not say whether he would follow the view expressed in Judge Chasanow's concurring opinion or whether he would adopt the argument of Mr. Newborn. He merely observed that the marital property award issue was

> so complex that both sides ought to be given the opportunity to show the components of the award. Perhaps the Court file in the tort case, or the attorneys' correspondence, will do so. In any event, we will give the parties twenty

days to suggest any such proof. If necessary, we can have another hearing.

The trial judge went on to say that, in his opinion, "the property [at issue] is sufficiently traceable to remain non-marital if in fact it was in the first place."

As the trial judge suggested, counsel for Mr. Newborn, post-trial, sent the judge certain documents that he evidently believed related to the issue to be decided. Those documents were: (1) demand letter dated January 28, 1980, to St. Paul Insurance Company from the attorney who represented the Newborns in their tort action; (2) Herbert Newborn's interrogatory answers filed in the personal injury suit; (3) a letter dated June 15, 1981, from the defense attorney in the tort case to the Newborns' attorney, suggesting various structured settlement options; and (4) a Social Security benefit information letter, dated August 8, 1980, which was sent to Mr. Newborn. The last two mentioned documents provided no useful information, but the first two did contain material of interest.

The demand letter from the Newborns' tort counsel said that Mr. Newborn earned $8.80 per hour (presumably on the date he last worked). He gave no current lost-wage information but said that Mr. Newborn, then age forty-three, had twenty-two years remaining in his expected work life. Counsel calculated Mr. Newborn's future lost wages as $264 per week ($8.80 X 30) or $13,728 per year (52 X $264). Based on those figures, he projected future lost wages of $302,000 ($13,728 X 22).

Like most demand letters, the letter from the Newborns' attorney made no effort to downplay the seriousness of the injuries suffered by his clients. Counsel said:

This case involves grievous personal injuries sustained by Herbert Newborn when the vehicle in which he was a passenger, that was stopped behind a school bus, was hit from the rear by another school bus. Mr. Newborn's injuries are set forth above and have resulted in a complete disruption of not only his own personal life but his marital life as well. Taking into consideration his medical expenses

to date, medical expenses he will have in the future, past and future wage loss, painful and disabling nature of his injuries, the damage it has done to the marital relationship and the wife's loss of income, we hereby submit our demand for settlement of this case in the amount of $1,500,000.00.

The letter explained that, although Ms. Newborn was not employed when the accident occurred, she would have sought employment but for the March 28, 1978, accident and would have earned between $7,657 and $7,957 annually.

Counsel put no dollar figure on loss of consortium damages but said:

### DAMAGE TO MARITAL RELATIONSHIP

Enclosed you will also find a copy of the report of Baltimore City Hospital dated January 25, 1980.[2] This report sets forth not only the effect that this horrendous accident has had on Mr. Newborn, but the effect that it has had on Mrs. Newborn and their life together. Their sex life has been greatly disrupted due to Mr. Newborn's injuries, and most specifically due to the urethral trauma. To this date, they have not yet resumed normal marital relations which they had enjoyed for over 20 years of married life.

The exact date that Mr. Newborn's interrogatory answers were signed in the Newborns' tort action does not appear in the record in this case, but it is evident that these answers were filed after September 1980—when Mr. Newborn went back to work as a longshoreman. Presumably because he had already returned to work, no claim for future lost wages was mentioned in the interrogatory answers, nor did Mr. Newborn claim that he would incur future medical expenses. The interrogatory answer listed past medical expenses of $13,-726.55, and a claim for past lost wages was also mentioned. But the exact amount of that wage-loss claim cannot be ascertained because material relevant to it was attached to the

---

2. The report mentioned in the letter was not provided to the court in the case *sub judice.*

original interrogatory answer but not attached to the answers provided to the trial judge in the case at bar.

The court in the subject suit resolved the marital property issues by an opinion and order dated October 30, 1998, which adopted the reasoning of Judge Chasanow set forth in *Blake*. The trial judge said:

> [W]e find that the proper measure of marital interest in the settlement is the loss of consortium, medical expenses directly or indirectly paid by the [marital] entity, and lost wages prior to the breakup of the marriage. Our next question is to apportion the amount of the settlement to reflect what is marital and non-marital.
>
> The medicals schedule clearly indicates $13,659 in medicals. The demand letter seeks $302,016 in lost wages, which would be both marital and non-marital, but, as usual, this is not reflected dollar for dollar in the settlement. The courts in *Bandow v. Bandow*, 794 P.2d 1346 (Alaska[ 1990] ), and *Landwehr v. Landwehr*, [111 N.J. 491] 545 A.2d 738 (1988), indicate that the mathematical allocation may not be precise, but we can make a reasonable apportionment. In this case, considering the length of the marriage after the award was received, we believe an allocation of 55% of the amount received after deduction for attorney's fees etc. is a fair allocation, albeit not an exact one. As indicated, much of the lost wages would have occurred during marriage.
>
> As set forth in the prior opinion, dissipated stocks and bonds and the motor home are directly traceable to the settlement. This remains non-marital.[3] We also find they have been dissipated by gambling after the break up of the marriage.
>
> As best we can tell at this point, the marital assets are as follows:

---

**3.** It is evident by what the trial judge said immediately thereafter that he intended to say: "This remains partially marital and partially non-marital."

| | His | Hers |
|---|---|---|
| 701 Cecil Ave. | $110,000 | $110,000 |
| Geo Automobile | | 5,000 |
| Family Use Personal Property | 7,350 | 7,350 |
| Dissipated Stocks and Bonds ($130,000 X 55%) | 71,500 | |
| Recreational Vehicle ($80,000 X 55%) | 44,000 | |
| Cadillac Automobile | 14,500 | |
| | $247,350 | $122,350 [4] |

The next question is how much ought to be awarded her as a monetary award. We will place this at $50,000, which is to be paid from the sale of the proceeds of the home if available.

### ISSUE I

#### A.

Did the trial court have jurisdiction to make a marital property award?

 Section 8–202 of the Family Law Article ("FA") of the Maryland Code (1999 Repl.Vol.) prescribes procedurally how a court makes a marital property determination. As it pertains to our discussion, that section reads:

(a) in a proceeding for an annulment or an absolute divorce, if there is a dispute as to whether certain property is marital property, the court shall determine which property is marital property:

---

4. In this appeal, Mr. Newborn does not take issue with the various valuations of property by the court. Moreover, he does not criticize the circuit court's conclusion that he dissipated stocks and bonds worth $130,000 or that the source of funds for the $80,000 mobile home had its origin in the settlement proceeds from the accident case.

(1) when the court grants an annulment or an absolute divorce;

(2) *within 90 days after the court grants an annulment or divorce, if the court expressly reserves in the annulment or divorce decree the power to make the determination;* or

(3) after the 90–day period if:

(i) the court expressly reserves in the annulment or divorce decree the power to make the determination;

(ii) during the 90–day period, the court extends the time for making the determination; and

(iii) the parties consent to the extension.

FA § 8–203(a) (emphasis added).

Mr. Newborn claims that the trial court lacked jurisdiction to grant a monetary award to Ms. Newborn because the ninety-day rule was violated. According to appellant, the judgment of absolute divorce became final on April 3, 1998, and therefore the monetary award, which was made in October 1998, was filed too late because, without the consent of the parties, the judgment exceeded the ninety-day limit by approximately four months.

At the conclusion of each party's closing argument on March 26, 1998, the trial judge said:

I don't think it was a perfect marriage on either side's behalf, but the only evidence I have is that she left. That isn't refuted and is corroborated. So we will find her as a desertion. Where that leaves us beyond that is sort of doubtful, but, in any event, *we will grant the divorce on the counter-complaint based on all of that.*

The other matters we will take under advisement.

(Emphasis added.)

Shortly thereafter, the following colloquy occurred between the court and Ms. Newborn's trial counsel:

THE COURT: Certainly if you need a QUADRO, which I think you will, prepare it.

[APPELLEE'S COUNSEL]: Okay. So I need it prospectively though from the date of the divorce, which I am assuming the court is announcing today.

THE COURT: Yes.

One week later, on April 2, 1998, the trial judge sent an opinion letter to counsel. In this letter, he said, *inter alia*, "We have already granted the divorce. . . ."

Mr. Newborn uses the just-quoted "already granted a divorce" language to support his conclusion that the judgment of absolute divorce became final, at the latest, on April 3, 1998, when the clerk made a docket entry referring to the April 2 nd letter.

A judgment is "any order of the court final in its nature and entered pursuant to these rules." Md. Rule 1–202(n). How the judgment is recorded is governed by Maryland Rule 2–601, entitled Entry of Judgment, which states:

(a) Prompt Entry—Separate Document. Each judgment shall be set forth on a separate document. Upon a general verdict of a jury or upon a decision by the court allowing recovery only of costs or a specified amount of money or denying all relief, the clerk shall forthwith prepare, sign, and enter the judgment, unless the court orders otherwise. Upon a special verdict of a jury or upon a decision by the court granting other relief, the court shall promptly review the form of the judgment presented and, if approved, sign it, and the clerk shall forthwith enter the judgment as approved and signed. *A judgment is effective only when so set forth and when entered as provided* in section (b) of this Rule. Unless the court orders otherwise, entry of the judgment shall not be delayed pending determination of the amount of costs.

(b) Method of Entry—Date of Judgment. *The clerk shall enter a judgment by making a record of it in writing on the file jacket, or on a docket within the file, or in a docket book, according to the practice of each court, and shall record the actual date of the entry. That date shall be the date of the judgment.*

(c) Recording and Indexing. Promptly after entry, the clerk shall (1) record and index the judgment, except a judgment denying all relief without costs, in the judgment records of the court and (2) note on the docket the date the clerk sent copies of the judgment in accordance with Rule 1–324.

Md. Rule 2–601 (emphasis added).

The Court of Appeals, in *Davis v. Davis*, 335 Md. 699, 710, 646 A.2d 365 (1994), discussed the interaction of Rule 1–202(n) and 2–601:

Read in conjunction, Rule 1–202[ (n) ] and Rule 2–601 make clear that two acts must occur for an action by a court to be deemed the granting of a judgment: the court must render a final order and the order must be entered on the docket by the clerk. These two required acts—rendition of a judgment by the court and entry of the judgment by the clerk—are discrete occurrences. Rendition of judgment is the judicial act by which the court settles and declares the decision of the law on the matters at issue. In other words, rendition is the court's pronouncement, by spoken word in open court or by written order filed with the clerk, of its decision upon the matter submitted to it for adjudication. The second act required under Maryland law—the clerk's entry of the judgment on the docket—is the purely ministerial act by means of which permanent evidence of the judicial act of rendering the judgment is made a record of the court. *See Doehring v. Wagner*, 311 Md. 272, 533 A.2d 1300; *Corey v. Carback*, 201 Md. 389, 94 A.2d 629 (1953).

A judgment is therefore not granted until it is both properly rendered and properly entered.

The trial court did render [5] a judgment at the conclusion of the March 26, 1998, hearing when it said: "[W]e will grant the divorce on the counter-complaint...."

---

5. For an extensive analysis of the meaning of the phrase "rendition of judgment," *see Jones v. Hubbard*, 356 Md. 513, 740 A.2d 1004 (1999).

This brings us to the question of whether the clerk made a proper docket entry regarding the judgment of absolute divorce prior to September 8, 1998. Mr. Newborn says there was such an entry. He points to a docket entry dated April 3, 1998, which reads in its entirety as follows: "Opinion by Judge Cawood (copies to Attys. Smith and Doud)."

■ Mr. Newborn reasons that because the opinion letter referenced in the docket states that "[w]e have already granted the divorce," the April 3 [rd] entry satisfies the requirements of Maryland Rule 2–601. It does not.

The "date of entry" of a judgment is a term of art that is especially significant in calculating the time periods for reviewing and enforcing judgments. It triggers the time for filing post judgment motions, for filing an appeal, and for enforcing judgments. It establishes the date of a lien on real property. For reasons such as these, the procedures for entering a judgment and for determining its date of entry are precise and certain.

P. Niemeyer & L. Schuett, *Maryland Rules Commentary*, 445 (2d Ed.1992).

Under this rule, there is no doubt about the date when a judgment is entered. Litigants and third persons can look at the file or docket to determine when the judgment was entered, and they are entitled to rely on that date as a public record. *Id.* at 446.

*Waller v. Maryland Nat'l Bank*, 332 Md. 375, 378–79, 631 A.2d 447 (1993).

■ A docket entry is supposed to make clear to all who read it the disposition of a claim or claims. *Board of Liquor License Com'rs v. Fells Point Cafe, Inc.*, 344 Md. 120, 133, 685 A.2d 772 (1996). The April 3 [rd] entry falls far short of that requirement. One cannot tell by reading the April 3 [rd] entry how the trial judge disposed of *any* claim. The only docket entry that does alert the public as to the grant of the divorce is the one entered on September 8, 1998, which reads: "Judgment of Final Divorce signed by Judge Cawood. Certified copies to Attorney's [sic] Smith and Doud."

We therefore conclude that the date of the judgment of divorce is September 8, 1998. The October 30, 1998, judgment dealing with the monetary award was made within ninety days of September 8 [th].[6]

### B. *Motion to Dismiss Appeal*

Appellee argues that appellant did not timely file an appeal from the September 8, 1998, judgment of absolute divorce and therefore is precluded from presenting any issue regarding the monetary award. Ms. Newborn posits that because appellant did not file his appeal within thirty days of September 8 [th], he is barred from raising any issues on appeal. She relies on Maryland Rule 8–202, which states that the notice of appeal shall be filed within 30 days after entry of the judgment or order from which the appeal is taken.

Section 8–213 of the Family Law Article reads:

**Enforcement.**

(a) *Enforcement under Maryland Rules.*—Any order, award, or decree entered under this subtitle may be enforced under the Maryland Rules.

(b) *Appeal.*—Any decree of annulment or of limited or absolute divorce in which the court reserves any power under this subtitle is final and subject to appeal *in all other respects.*

(Emphasis added.)

■■■ Section 8–213, as applied to this case, means that, if either Mr. or Ms. Newborn took the position that the judgment of absolute divorce should not have been granted, that party had thirty days from September 8, 1998, to file an appeal from the grant of divorce. Mr. Newborn, of course,

---

**6.** The order docketed on September 8, 1998, also provided that "the issues of marital property ... are held under advisement." Appellant contends that this language was "insufficient" to meet the requirement set forth in FA § 8–203(a)(2) that the court "expressly reserve" the power to determine which property is marital. This semantic argument is without merit. Saying in an order that the "marital property issues are held under advisement" is the legal equivalent of "expressly reserv[ing]" the power to determine which property is marital.

does not challenge the judgment of absolute divorce—the judgment was granted in *his* favor. Section 8–213, by its plain language, does not mean that when a trial court grants a judgment of absolute divorce and reserves on the issue of what property is marital, a party must appeal the monetary award within thirty days of the entry of the judgment of divorce. If the law were as appellee contends, the results would be absurd. A person in Mr. Newborn's position would be required to appeal a monetary award prior to any announcement by the trial court as to what, if any, monetary award was being granted. Accordingly, we hold that Mr. Newborn had thirty days from the date the monetary award became final to file an appeal on that issue. He met that deadline. Therefore, the motion to dismiss the appeal shall be denied.

## *ISSUE II*

### *ALLEGED AGREEMENT*

■ Mr. Newborn asserts that the trial judge erred "when he failed to recognize that the parties made their own division of the proceeds of the personal injury settlement." In support of this allegation, appellant accurately says:

> Appellant testified, and [a]ppellee was forced to admit that, following receipt in 1981, the bulk of the settlement funds were deposited in investment accounts directed by [a]ppellant, but separately titled in the individual names of the parties. Appellant's account consisted of 95% of the settlement proceeds, while that of [a]ppellee accounted for 5%. These ratios remained fixed and constant throughout the years to come and the parties received regular statements indicating the respective values of their shares.

(References to record extract omitted.) Appellant goes on to argue that the way the funds were treated during the marriage constituted a "shared recognition" by the parties that the settlement proceeds belonged ninety-five percent to him and five percent to his former spouse.

One way to prevent assets acquired during the marriage from meeting the definition of "marital property" is to exclude them by valid agreement. *See* FA § 8–201(e). Although appellant does not say so explicitly, he evidently contends that the parties mutually agreed that the settlement property was not to be treated as marital property.

The trial judge did not err in the manner appellant alleges. First of all, Mr. Newborn's testimony that the parties agreed as to how the accounts should be titled was rebutted by the testimony of Ms. Newborn. According to her testimony, Mr. Newborn acted alone when he decided to title the Legg Mason accounts ninety-five percent to five percent in his favor. Second, even if the parties did agree as to how the accounts were to be *titled,* that agreement would not be determinative as to whether the property was marital. *See* FA § 8–201(e).[7] What would be determinative under FA section 201(e) would be an agreement by the couple to exclude as marital property certain (or all) of the proceeds from the personal injury settlement. Here, there was no evidence of such an agreement.

## *ISSUE III*

Appellant's principal contention in this case is that, as a matter of law, no portion of the monies received from the settlement of a suit for personal injuries should be considered marital property. In support of this argument, he relies on *Unkle v. Unkle,* 305 Md. 587, 505 A.2d 849 (1986).

---

7. FA § 8–201(e) provides:

*Marital property.*—(1) "Marital property" means the property, *however titled,* acquired by 1 or both parties during the marriage:

(2) "Marital property" includes any interest in real property held by the parties as tenants by the entirety unless the real property is excluded by valid agreement.

(3) Except as provided in paragraph (2) of this subsection, "marital property" does not include property:

(i) acquired before the marriage;

(ii) acquired by inheritance or gift from a third party;

(iii) excluded by valid agreement; or

(iv) directly traceable to any of these sources.

(Emphasis added.)

## A. *Maryland Case Law*

In *Unkle,* the husband, William, suffered personal injuries in an accident occurring after he separated from his wife but before the two divorced. *Id.* at 589, 505 A.2d 849. As a result of the accident, William broke both legs, was out of work for seven and a half months, and incurred $1,824.26 in medical expenses. *Id.* While convalescing from his injuries, William lived with his parents and received no assistance from his estranged wife. *Id.* William hired a lawyer to handle his personal injury claim, but by the time his divorce case was heard, no personal injury suit had been filed.

The trial judge in the domestic relations case ruled that any proceeds William received in the tort suit would be considered marital property and that the proceeds should be divided on an "if, as, and when" basis of eighty percent to William and twenty percent to his former spouse. *Id.*

In *Unkle,* Chief Judge Robert Murphy, speaking for the Court, construed the word "property" as used in the definition of "marital property" contained in FA section 8–201(e). After analyzing the Act's legislative history, as well as precedent from other jurisdictions, he wrote:

> In view of the aforegoing, we do not think that any part of William's unliquidated personal injury claims fits within the legislatively intended definition of marital property in § 8–201(e). On the contrary, the claim is uniquely personal to the holder. And while it may have some attributes of personal property, the claim was not, within the ambit of the statutory language, "acquired" during the marriage by one or both spouses. It arose from purely fortuitous circumstances and not from any on-going marital initiative to acquire marital assets. The claim simply accrued to the injured spouse as a result of an accident and was his separate property. Nothing in the statute suggests that the General Assembly intended that such a claim would constitute marital property subject to equitable distribution upon divorce by a monetary award. In so concluding, we recognize that the statute's broad purpose requires that it be

liberally construed to protect the interest of a spouse who makes nonmonetary contributions during the marriage. *Harper v. Harper, supra,* 294 Md. at 64, 448 A.2d 916. As we have said, however, the claim is simply not the type of resource contemplated by the statutory definition of marital property even though, in part at least, payment of the claim would produce monies which would replenish marital assets previously diminished through payment of medical expenses and the loss of wages.

*Id.* at 596, 505 A.2d 849.

Appellant's reliance upon *Unkle* is understandable. But there are several factual differences in the case at bar that distinguish it from *Unkle, viz:* (1) *Unkle* involved an inchoate claim, whereas in the case *sub judice,* the claim was not inchoate since suit was settled prior to the dissolution of the marriage; (2) Mr. Unkle's accident and his recuperation occurred *after* he and his spouse separated; (3) in their lawsuit, the Newborns made a joint claim for loss of consortium; and (4) Ms. Newborn helped her husband during his period of recuperation—in fact, she apparently missed approximately two years of employment while helping her husband during his recovery.

Ten months after the *Unkle* decision was announced, the Court of Appeals decided *Queen v. Queen,* 308 Md. 574, 521 A.2d 320 (1987). The main issue in *Queen* was whether a lump sum workers' compensation award for permanent partial disability arising out of injuries sustained during the marriage constituted marital property within the contemplation of FA section 8–201(e). The question arose after David Queen was injured on his job approximately six months before he and his wife (Dora) separated. *Id.* at 576, 521 A.2d 320. As a result of his injury, Mr. Queen received weekly workers' compensation benefits for about twenty-five months. *Id.* at 576, 521 A.2d 320. He then received a payment of $55,000 as a lump sum benefit payment for his permanent partial disability.[8]

---

8. A deduction of $5,000 was made for costs and attorney's fees from a total payment of $60,000.00.

Mr. Queen deposited the $55,000 in an account in his name alone. *Id.* The trial judge in the domestic relations case ruled that the entire $55,000 was marital property and, taking that into account, made a monetary award to Dora. *Id.* at 576–77, 521 A.2d 320.

The Court of Appeals held in *Queen* that under Maryland's workers' compensation law the award of permanent partial disability represented an amount "based on the loss of future earning capacity and not merely upon the loss of wages." *Id.* at 586, 521 A.2d 320. Chief Judge Robert Murphy said for the *Queen* Court:

> [W]e note that the award was received approximately one year before the couple divorced. We note also that the purpose of the Workmen's Compensation Act is to assist workers and their families, *Queen v. Agger,* 287 Md. 342, 343, 412 A.2d 733 (1980), and that the Marital Property Act should be construed liberally to effect its broad remedial purpose. *Harper v. Harper,* 294 Md. 54, 64, 448 A.2d 916 (1982). *Nonetheless, we hold that only the portion of the husband's award compensating for loss of earning capacity during the marriage is marital property subject to equitable distribution by the trial judge.* Due to the personal nature of the injuries giving rise to a permanent partial disability award, we cannot conclude that the General Assembly intended a noninjured spouse to share in the compensation for the injured spouse's loss of future earning capacity representing a time period beyond the dissolution of the marriage. Because the record before us fails to disclose the information essential to computing the portion of the husband's award, if any, allocable as marital property, we shall remand the case to the trial court for additional fact-finding and disposition consistent with these principles.

*Id.* at 586, 521 A.2d 320 (emphasis added).

This Court was presented with a case much like *Queen* in *Lowery v. Lowery,* 113 Md.App. 423, 688 A.2d 65 (1997), except for the fact that the injured spouse in *Lowery* received a workers' compensation settlement for injuries that occurred

prior to his marriage. *Id.* at 427, 688 A.2d 65. After filing three separate workers' compensation claims, Mr. Lowery, the injured spouse, finally reached a settlement with the employer/insurer in April 1995. By virtue of the settlement, he received a lump sum of $7,500 and an annuity of $500 a month for life (or a minimum of twenty years), with a guaranty of a minimum of $120,000 payable to either him or his estate. *Id.* at 428, 688 A.2d 65. The agreement was silent, however, as to whether the purpose of the award was to compensate Mr. Lowery for lost wages, medical expenses, or otherwise. *Id.* One month later, in May 1995, Mrs. Lowery obtained a judgment of absolute divorce. *Id.* at 429, 688 A.2d 65. In *Lowery,* the trial court concluded that $44,000 of the settlement was marital property because it was compensation to the husband for loss of his earning capacity during the marriage. *Id.* at 429, 688 A.2d 65.

In *Lowery,* we interpreted *Queen*

as holding that the *purpose of the benefits,* rather than the timing of the accrual of the underlying claim or the award/settlement, is determinative in characterizing a workers' compensation settlement or award as marital or separate property.

*Id.* at 434, 688 A.2d 65 (emphasis added).

We noted that "to the extent that [the award] compensated Mr. Lowery for lost wages or future earning capacity during the marriage or medical expenses paid for out of marital assets" it would be considered marital property. *Id.* at 436–37, 688 A.2d 65.

As already mentioned, in the case *sub judice,* the trial judge, based on the concurring opinion in *Blake, supra,* opined that some, but not all, of the proceeds from the personal injury settlement constituted marital property. In *Blake,* the Court granted *certiorari* to decide the same issue with which we are faced. *Blake,* 341 Md. at 328, 670 A.2d 472. The appeal was, however, dismissed because it was untimely filed.

*Id.* at 328, 670 A.2d 472. Judge Chasanow's opinion[9] expressed the view that the court should have decided the substantive issue presented. *Id.* at 341–42, 670 A.2d 472. The factual situation presented in *Blake* is somewhat analogous to that in the case *sub judice*.

Mr. Blake, as a result of a February 1984 accident, lost the portion of his left leg below the kneecap. *Id.* at 343, 670 A.2d 472. The accident occurred approximately three years prior to the date the Blakes separated. Prior to separation, Mr. and Mrs. Blake brought suit against the steamship line whose negligence allegedly caused the accident. Approximately fourteen months before he separated from his wife, the case settled. *Id.* at 343, 670 A.2d 472. Mr. Blake signed a release in exchange for a one million dollar payment, while Ms. Blake released the (allegedly) negligent party from liability "for consideration of one dollar ($1.00) and other good and valuable consideration" (including a settlement made by Delta Steamship Lines, Inc., "with my husband, Clifton Blake, for injuries sustained by him. . . ."). *Id.* After payment of attorney's fees and costs, Mr. Blake netted $637,493.09, which by the time the divorce was granted had been shrunk to approximately $115,-000.00. *Id.* at 343–45, 670 A.2d 472. The trial judge declined to treat any of the $115,000 as marital property and explained:

> [I am] unable to determine what, if any, of the [personal injury] proceeds represented [marital property]. It is the obligation of the party asserting a marital property interest in specific property to produce evidence as to the identity and value of that property. As a result, this court finds that the settlement proceeds flowed from a personal injury sustained by Clifton Blake and, therefore, [are] not a marital asset.

*Id.* at 344, 670 A.2d 472.

Judge Chasanow used an analysis quite similar to that utilized in *Queen, supra.* He said that when the right to receive payments for personal injury is reduced to an actual

---

9. Chief Judge Bell joined in the concurring opinion in *Blake*.

liquidated amount the monies received are not primarily marital property. *Id.* at 347, 670 A.2d 472.

As mentioned by the trial court in the April 3 [rd] preliminary opinion, Judge Chasanow went on to say that the portion of the personal injury settlement that involved reimbursement for lost wages, prior to the divorce, together with damages for loss of consortium and reimbursement for medical expenses paid, either directly or indirectly, by the marital unit, should be considered marital property.

### B. *Other Jurisdictions*

Cited in support of the view espoused in the *Blake* concurring opinion was *Brown v. Brown*, 100 Wash.2d 729, 675 P.2d 1207, 1212 (1984), a decision by the Supreme Court of Washington. The *Brown* Court said:

> Since the recovery is intended to make whole an injury, it should partake of the same character as that which has suffered injury or loss. Thus, damages for physical injury and pain and suffering, which compensate the injured spouse for the harm to his or her separate individuality, should be separate property. Damages for injury-related expenses should be community or separate according to which fund incurs the expenses. Similarly, damages for lost wages and diminished earning capacity should partake of the same community or separate character as the wages and earning capacity they are intended to reimburse or make whole.

*Id.* at 348, 670 A.2d 472 (citation omitted).

Some states, such as New York and Texas, have passed legislation dealing specifically with how compensation for one spouse's personal injuries should be treated. In New York, recovery for personal injury is treated as the spouse's separate property. *See* N.Y. Dom. Rel. Law § 236[B](1)(d)(2). Texas also considers as separate property "the recovery for personal injuries sustained by the spouse during marriage" but treats as marital property "any recovery for loss of earning capacity during marriage." Tex. Fam.Code Ann.

§ 5.01[a][3]. The Uniform Marital Property Act, which has so far been adopted only in Wisconsin, provides that proceeds from personal injury recoveries are the injured spouse's separate property except for amounts attributable to expenses paid or otherwise satisfied from marital property. Unif. Marital Property Act § 4(g)(6), 9A U.L.A. 109 (1983).

Some courts have taken what has been referred to as a "mechanical" approach to the issue under discussion. *See Johnson v. Johnson,* 317 N.C. 437, 346 S.E.2d 430, 435 (1986). Under that approach, a court reads the definition of marital property literally. Courts that have adopted this view conclude that since the jury verdict or settlement received by the injured spouse as a result of personal injury was acquired during marriage and comes within none of the enumerated exceptions to the statutory definition of marital property, it must be marital property. *See, e.g., In re Marriage of DeRossett,* 173 Ill.2d 416, 219 Ill.Dec. 487, 671 N.E.2d 654 (1996); *Collier v. Collier,* 8 Haw.App. 28, 791 P.2d 725 (1990); *Liles v. Liles,* 289 Ark. 159, 711 S.W.2d 447 (1986); *In re Marriage of Fjeldheim,* 676 P.2d 1234 (Colo.Ct.App.1983); *see also* Gary M. Skoloff, et al., 2 *Valuation and Distribution of Marital Property* § 23.08[1][c] 152–53 (1999) (hereinafter "Skoloff"). Skoloff lists fifteen "equitable distribution" jurisdictions that have taken this approach.[10] Maryland is an "equitable distribution" jurisdiction, but that approach was rejected in both *Queen* and *Lowery,* at least insofar as it dealt with proceeds from workers' compensation awards or settlements.

A second approach has been characterized as "unitary." *See Weisfeld v. Weisfeld,* 545 So.2d 1341, 1346 (Fla.1989). This approach is the polar opposite of the mechanical approach. *Bandow v. Bandow,* 794 P.2d 1346, 1347 (Alaska 1990). Under the unitary approach, none of the recovery for personal injuries received during marriage is considered mari-

---

10. Unlike community property states, "equitable distribution" jurisdictions attempt to divide property equitably, instead of equally, taking into consideration various factors, such as the contribution of the spouse towards the accumulation of property, the age and health of each spouse, etc.

tal property; the proceeds are not considered as being "acquired" during marriage because the recovery arises from circumstances entirely unrelated to any marital initiative to acquire assets. *Id. Unkle* took that approach, albeit in a case involving an inchoate personal injury claim that had not even been filed when the divorce was granted. Utah and Delaware take this approach, as well. *See Izatt v. Izatt*, 627 P.2d 49 (Utah 1981); *Gloria B.S. v. Richard G. S.*, 458 A.2d 707 (Del.Fam.Ct.1982). The Oregon Court of Appeals also appears to take this approach, at least with respect to proceeds from the recovery for a post separation injury. *Marriage of Bull*, 48 Or.App. 565, 617 P.2d 317 (1980).

The third view is called the analytical approach. *See, e.g., Mathew v. Palmer*, 8 Neb.App. 128, 589 N.W.2d 343 (1999); *Mistler v. Mistler*, 816 S.W.2d 241 (Mo.App.1991); *Bandow v. Bandow*, 794 P.2d 1346 (Alaska 1990); *Landwehr v. Landwehr*, 111 N.J. 491, 545 A.2d 738 (1988); *see also Lowery*, 113 Md.App. at 434, 688 A.2d 65. This analytical approach asks what the award, settlement, or judgment was intended to replace and looks to the nature of the personal injury award or settlement to explain why the property is the separate asset of a spouse or why it should be considered marital property subject to equitable distribution. The approach was endorsed by Judge Chasanow in *Blake* and also in both *Queen* and *Lowery* (in a workers' compensation context). Recompense to the injured spouse for non-economic damages—such as pain, suffering, disability, and loss of ability to lead a normal life—are not considered marital property.

The rationale for the analytical approach was spelled out in *Graham v. Franco*, 488 S.W.2d 390, 394 (Tex.1972):

[T]he body of the wife brought into the marriage was peculiarly her own; and that if any "property" was involved in a personal injury to the wife, it was peculiarly hers. If her house, her separate property, were set afire and destroyed by a third person, the recovery should be her separate property. If an automobile were owned by the wife before marriage and was injured or destroyed, the recovery should go to repay the loss or damage to her

separate property. So, the reasoning continues, if the arm of the wife is cut off, the recovery for the loss because of disfigurement and for the attendant pain and suffering should go to the wife. The reasoning is that the recovery is a replacement, in so far as practicable, and not the "acquisition" of an asset by the community estate.

Another rationale for the analytical approach was set forth in *Bandow v. Bandow,* 794 P.2d 1346 (Alaska 1990), as follows: "Nothing is more personal than the entirely subjective sensations of agonizing pain, mental anguish, embarrassment because of scarring or disfigurement, and outrage attending severe bodily injury." *Id.* at 1349.

Except for California, all of the community property states have adopted the analytical approach. Skoloff at § 23.20[1][b], 150. Skoloff lists 15 "equitable distribution" jurisdictions, including Maryland (citing *Queen, supra*), as having adopted the analytical approach. It appears currently to be a rule that is in its ascendancy. *Id.* at 151.

## C. *Our Interpretation*

It must be conceded that the literal or mechanical approach to the interpretation of FA section 8–201(e) has some attraction. Literally, monies received from a personal injury jury award or settlement seem, at least on the surface, to fit the definition of "marital property" and do not appear to fit neatly within any of the exceptions. *See* FA § 8–201(e), which is quoted at n.7, *supra.* Moreover, an equitable result—one not far different from that arrived at by using the analytical approach—can be reached by treating a spouse's personal injury recovery as marital but then carefully weighing the eleven factors set forth in FA section 8–205(b) [11] before grant-

---

11. FA § 8–205 reads, in pertinent part:
[Marital property]—Monetary award.
(a) *Grant of award.*—Subject to the provisions of subsection (b) of this section, after the court determines which property is marital property, and the value of the marital property, the court may transfer ownership of an interest in a pension, retirement, profit sharing, or deferred compensation plan from 1 party to either or both

ing a monetary award based on the portion of marital proper-
ty that originates due to the injured spouse's recovery or
settlement. If such an approach were used, one factor set
forth in section 8–205(b)(8)—"how and when specific marital
property ... was acquired, including the effort expended by
each party in accumulating the marital property ...."—would
undoubtedly be of the greatest importance. *Cf. Alston v.
Alston*, 331 Md. 496, 629 A.2d 70 (1993) (when one spouse wins
a lottery, trial judge should give great weight to factor set
forth in § 8–205(b)(8)).

We do not, however, write on a blank slate. The Court of
Appeals used the analytical approach in *Queen* and said that

---

parties, grant a monetary award, or both, as an adjustment of the
equities and rights of the parties concerning marital property, wheth-
er or not alimony is awarded.

(b) *Factors in determining amount and method of payment or terms
of transfer.*—The court shall determine the amount and the method of
payment of a monetary award, or the terms of the transfer of the
interest in the pension, retirement, profit sharing, or deferred com-
pensation plan, or both, after considering each of the following
factors:

(1) the contributions, monetary and nonmonetary, of each party to
the well-being of the family;

(2) the value of all property interests of each party;

(3) the economic circumstances of each party at the time the
award is to be made;

(4) the circumstances that contributed to the estrangement of the
parties;

(5) the duration of the marriage;

(6) the age of each party;

(7) the physical and mental condition of each party;

(8) how and when specific marital property or interest in the
pension, retirement, profit sharing, or deferred compensation plan,
was acquired, including the effort expended by each party in accumu-
lating the marital property or the interest in the pension, retirement,
profit sharing, or deferred compensation plan, or both;

(9) the contribution by either party of property described in § 8–
201(e)(3) of this subtitle to the acquisition of real property held by the
parties as tenants by the entirety;

(10) any award of alimony and any award or other provision that
the court has made with respect to family use personal property or
the family home; and

(11) any other factor that the court considers necessary or appro-
priate to consider in order to arrive at a fair and equitable monetary

proceeds from a workers' compensation award, for the most part, were intended by the legislature to be the separate property of the injured spouse and should not be considered marital property. *Queen,* 308 Md. at 586, 521 A.2d 320. As implicitly recognized by Judge Chasanow in *Blake,* there is no good reason why we should use the analytical approach when considering workers' compensation awards and use a different approach when considering a recovery by a spouse that comes about as a result of a tort judgment or settlement. Moreover, no jurisdiction, so far as our research has uncovered, changes its approach depending on whether the injured spouse recovers in tort or as a result of a workers' compensation claim.

We also reject Mr. Newborn's suggestion that the *Unkle* case is controlling. In *Unkle,* at the time the divorce was granted, suit had not even been filed and the injured spouse's claim was both inchoate and almost entirely speculative. Here, the value of the claim was established approximately sixteen years prior to the Newborns' separation.

We hold that Judge Cawood correctly decided to use the analytical approach in his treatment of the personal injury settlement. Accordingly, all of the proceeds from the settlement were the separate and non-marital property of Mr. Newborn except: (1) monies that were paid to reimburse the Newborns for medical expenses; (2) monies paid to reimburse Mr. Newborn for wages he lost as a result of the accident prior to September 1981—when he returned to work; (3) monies paid to reimburse Ms. Newborn for wages she would have earned if she had not stayed home to care for appellant; and (4) monies paid to the Newborns for their *joint* claim for loss of consortium.[12]

---

award or transfer of an interest in the pension, retirement, profit sharing, or deferred compensation plan, or both.

12. In Maryland, loss of consortium is a joint claim for loss of society, affection, assistance, and conjugal fellowship. *Deems v. Western Maryland Ry. Co.,* 247 Md. 95, 100, 231 A.2d 514 (1967).

### ISSUE IV

### BURDEN OF PROOF

▆▆▆▆▆ In a divorce case, a party asserting a marital interest in property has the burden of producing evidence as to the identity of the property and of its value. *Odunukwe v. Odunukwe*, 98 Md.App. 273, 282, 633 A.2d 418 (1993); *Noffsinger v. Noffsinger*, 95 Md.App. 265, 282, 620 A.2d 415 (1993); *Pickett v. Haislip*, 73 Md.App. 89, 97, 533 A.2d 287 (1987). Appellant contends that, even if the court did not err in utilizing the analytic approach, appellee failed to meet her burden of proving what portion of the settlement proceeds were marital property. We agree.[13]

There was evidence presented showing that some of the $339,000 settlement was intended to reimburse the Newborns for medical expenses in the amount of $13,726.55, but this was

---

13. At trial, Ms. Newborn suggested that all of the proceeds of the settlement were marital because the settlement check was made payable to the Newborns "individually" and as "Husband and Wife [and their attorneys]." She evidently contended that a tenancy by the entirety was created. The trial judge rightly rejected that contention.

A tenancy by the entireties "is essentially a joint tenancy, modified by the common-law theory that the husband and wife are one person." *Jones v. Jones*, 259 Md. 336, 270 A.2d 126 (1970) (quoting 1 *Tiffany on Real Property*, 645). To create this joint tenancy, however, there must be evidence of an intent to transfer the personal property to the marital unit as a whole. *Diamond v. Diamond*, 298 Md. 24, 31, 467 A.2d 510 (1983).

Mr. Newborn had an individual claim, and he and his wife had a joint claim for loss of consortium. Had a judgment been rendered at trial, presumably a separate judgment would have been entered as to each claim. *See Diamond*, 298 Md. at 31, 467 A.2d 510. Here, there was no evidence that the insurance company issuing the settlement check did so with the intent to merge the claims of each party and transfer all the funds to the parties as a marital unit. Thus, a tenancy by the entireties will not be assumed. *Id.; see also Jones*, 259 Md. at 342, 270 A.2d 126 (holding that tenancy by the entireties not created because no evidence of any intent on the part of the wife or husband that these claims be treated as such). The issuance of a check to a husband and wife, and their attorney, is not a transfer of one of the spouse's individual claims "so as to vest title to that claim" to the other as tenants by the entireties. *Jones*, 259 Md. at 342, 270 A.2d 126.

less than five percent of the entire $339,000 settlement. Without exception, no figures were presented as to what claim was made for any other element of damages. The trial judge said in his opinion that counsel for the Newborns had made claim for $302,016 in lost wages; that lost wages were not reflected in the settlement "dollar for dollar"; but that nevertheless, he could make a "reasonable apportionment" of the settlement proceeds. A reasonable apportionment was impossible given the meager evidence presented. The demand letter made it clear that the $302,016 was a claim for *future* lost wages, but as far as it is possible to ascertain the defense paid nothing for future lost wages due to the fact that Mr. Newborn went back to work prior to the settlement. One cannot tell what portion, if any, of the settlement was for Ms. Newborn's lost wages.

If the figures set forth in the demand letter are accurate, it can be approximated that Ms. Newborn lost roughly $7,800 per year when she refrained from seeking employment outside the home so that she could help with the chores associated with Mr. Newborn's recuperation. Under the analytical approach, reimbursement for those wages would be marital property to the extent that they were reflected in the settlement. But we do not know how long she stayed away from work or whether the defense accepted her contention regarding this wage loss.[14] Moreover, there is no evidence, whatsoever, to determine what amount, if any, of the settlement proceeds were intended to reimburse the parties for their joint loss of consortium. Because of the very limited information produced in the lower court, there plainly was insufficient evidence to support the trial judge's conclusion that fifty-five percent of the settlement proceeds was marital. We therefore hold that the appellee did not meet her burden of producing evidence showing what portion of the property traced to the personal injury settlement was marital.

---

14. If she stayed out of work for the same length of time her husband did, she would have lost approximately $19,500 (about 5.9 percent of the $339,000 settlement).

We acknowledge that it is often very difficult to produce evidence necessary to apply the analytical approach. This is especially true in a case like this one where a great deal of time has passed since the personal injury claim was settled. The same is also true in many cases where lump-sum settlements or jury awards are made at a time when no divorce is contemplated.

 Because the third issue resolved in this case was one of first impression, we think that fundamental fairness requires us to remand the case to give Ms. Newborn an opportunity to put on evidence to prove what portion of the personal injury settlement was marital.

Where the non-injured spouse is claiming a portion of the other spouse's [personal injury settlement or jury award] as marital property, it is important for that spouse, and the court, to be able fully to explore and, if possible, label the components of the settlement or award as compensation for past lost wages, future loss of earning capacity, losses to the marital estate, future medical expenses, or damages for injury to the property or person. *See, e.g., In re Marriage of Blankenship*, 210 Mont. 31, 682 P.2d 1354 (1984); *Gibson–Voss*, 4 Neb.App. at 241–42, 541 N.W.2d at 78–79; *Crocker*, 824 P.2d at 1121–22. Thus, although we shall vacate the judgment of the circuit court for the reasons stated, we are moved to remand this matter to the circuit court for further proceedings to redetermine an appropriate monetary award, if any. We presume that the parties, and particularly [Ms. Newborn] will be afforded the opportunity to engage in appropriate discovery, in advance of an evidentiary hearing, so that all available information bearing on this matter can be placed before the trial judge. We are moved to this disposition because, as we are announcing in this opinion a clarification of the holding in *Queen v. Queen*, fundamental fairness and the potential equities of the instant case compel that the parties and the court be accorded an opportunity to determine, with more precision, whether any, and what, portion of [Mr. Newborn's] settlement consti-

tutes marital property, and the effect of that determination in calculating an equitable monetary award, if any.

*Lowery,* 113 Md.App. at 438–39, 688 A.2d 65.

**JUDGMENT OF ABSOLUTE DIVORCE AFFIRMED; JUDGMENT GRANTING MONETARY AWARD VACATED; CASE REMANDED TO THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THE VIEWS EXPRESSED IN THIS OPINION; COSTS TO BE DIVIDED BETWEEN THE PARTIES.**