688 A.2d 65

**Jack W. LOWERY**

v.

**Patricia A. LOWERY.**

**No. 369, Sept. Term, 1996.**

Court of Special Appeals of Maryland.

Jan. 30, 1997.

424

Michael Scott Cohen (W. Bryan Hall, on the brief), Cumberland, MD, for Appellant.

Russell R. Marks (Gilbert, Marks & DiGirolamo, Chartered, on the brief), Hagerstown, MD, for Appellee.

Argued before FISCHER, HARRELL, and THIEME, JJ.

HARRELL, Judge.

Jack Winston Lowery appeals from a judgment of the Circuit Court for Allegany County granting appellee, Patricia A. Lowery, a monetary award of $27,748.50 as part of the winding-up of the dissolution of their marriage. Mr. Lowery objects to the circuit court's characterization as marital property of a portion of the workers' compensation settlement he received related to an injury sustained prior to the date on which the parties were married. Although we agree in principle with the circuit court's determination that the portion of a workers' compensation settlement that provides compensation for lost wages or future earning capacity constitutes marital property, we conclude that the evidence adduced on this matter failed to establish which portion of the settlement at issue qualified as marital property. Therefore, we shall vacate the judgment of the circuit court and remand this case for further proceedings not inconsistent with this opinion.

## ISSUES

Appellant presents the following questions for our review, which we have rephrased as follows:

1. Whether the settlement of workers' compensation claims related to an injury which occurred prior to the parties' marriage constitutes marital property subject to distribution in a divorce proceeding.

2. Whether the trial court abused its discretion by granting Mrs. Lowery a monetary award of $27,748.50 because she failed to present sufficient evidence to establish which portion of the workers' compensation settlement was marital property.

3. Whether the circuit court committed reversible error by granting appellee a monetary award which exceeded the value of the marital property.

## FACTS

The Lowerys were married in Tennessee on 7 January 1982. Soon thereafter, they established residence in Allegany Coun-

ty, Maryland. Their marriage, by all appearances, was a troubled one. They endured separations on several occasions. The parties' final separation occurred on 31 July 1994.

Mr. Lowery had been employed with Kelly–Springfield Tire Company (Kelly–Springfield) for twenty-six years, from June 1961 through June 1987. The settlement proceeds that form the basis of the instant controversy stem from a rotator cuff injury Mr. Lowery suffered while at work on 26 September 1976. Although he continued to work at Kelly–Springfield after his injury, appellant filed at least three workers' compensation claims.[1] Further, he underwent surgery twice to repair his rotator cuff. Following those operations, Mr. Lowery developed multiple pulmonary emboli,[2] and in 1981, he experienced repeated episodes of thrombophlebitis [3] in his left leg. Between 1981 and 1987, he received three separate workers' compensation awards for permanent partial disability in the amounts of $4,000, $8,000 and $25,000, respectively.[4] Mr. Lowery's employment with Kelly–Springfield ended in June 1987 due to a plant shutdown. Since that time, he has worked occasionally as a bartender. From 1987 until 1995, Mr. Lowery did not receive any workers' compensation benefits.

Mr. Lowery filed a Complaint for limited divorce on the grounds of desertion and constructive abandonment on 1 August 1994. Mrs. Lowery filed her Answer on 11 October and a Counter–Complaint on 17 October seeking either a limited divorce on the ground of constructive desertion or an

---

1.  The record is devoid of any underlying details that would permit us to distinguish between the three claims that were settled.

2.  A pulmonary embolism is an obstruction by blood clot of the artery that conveys blood from the heart to the lungs.

3.  Thrombophlebitis is an inflammation of a vein with the concurrent formation of a blood clot that adheres to the vein's wall.

4.  These awards were received by appellant prior to sometime in 1987. An indeterminate portion of this money was applied to improvements to the marital home. All of the proceeds from these awards were spent by appellant prior to the date the circuit court received evidence on the property issues in the divorce action.

absolute divorce on the ground of adultery, as well as the disposition of various property issues.[5]

On 12 April 1995, appellant entered into an Agreement of Final Compromise and Settlement with Kelly–Springfield and its workers' compensation insurer, Travelers Indemnity Company (Travelers), in settlement of his three workers' compensation claims. The agreement explicitly provided that it was a settlement of all claims that Mr. Lowery might have for an injury he sustained on or about 26 September 1976. Under the terms of the settlement, appellant received a lump sum payment of $7,500 [6] and monthly payments of $500.00 for his life. The agreement guaranteed that under the annuity, Mr. Lowery, or his estate, would receive a minimum aggregate amount of at least $120,000, payable in monthly increments of $500.00 over a period of twenty years. The agreement, however, did not elaborate on whether its purpose was to compensate Mr. Lowery for lost wages or earning capacity, medical expenses, disfigurement, etc. Moreover, the agreement did not specify the period of lost wages or earning capacity that it was designed to cover.

On 12 May 1995, pursuant to a hearing held on 9 May 1995, the court entered a Judgment of Absolute Divorce in favor of Mrs. Lowery on the ground of adultery,[7] while expressly reserving disposition of the property issues. An evidentiary hearing on the issues reserved by the trial court was conducted on 3 July 1995. On 11 December 1995, the court issued a Memorandum and Judgment granting Mrs. Lowery a mone-

---

5. Mrs. Lowery subsequently filed two Amended Counter–Complaints. The first, filed 28 October, sought essentially the same relief as the original Counter–Complaint along with a request that she be permitted to resume the use of her maiden name, McTaggert. A Second Amended Counter–Complaint was filed 21 April 1995. In addition to the relief sought in the earlier Counter–Complaints, she requested that the court transfer an interest in Mr. Lowery's retirement benefits to her.

6. Pursuant to the settlement, a $15,000 lump sum was paid. Half of that amount went to the attorney who represented appellant in that matter.

7. No appeal was taken by either party from that judgment.

tary award of $27,748.50 and reduced that sum to a judgment *in personam* against appellant. The findings made by the court that are relevant to this appeal include (1) appellee possessed tangible personal property valued at $167.50 and appellant possessed tangible personal property valued at $11,-664.20, and (2) $44,000 of appellant's 12 April 1995 workers' compensation settlement constituted marital property. The court concluded that the $44,000 sum was compensation to Mr. Lowery for loss of his earning capacity during the marriage.[8] Mr. Lowery filed an appeal on 5 January 1996.

## *ANALYSIS*

### *I.*

Appellant's initial contention is that his workers' compensation settlement was not marital property because it was compensation for an injury which occurred before the parties were married. He directs the Court's attention to the definition of marital property contained in Md.Code Ann., Fam.Law § 8–201(e) (1991 Rep.Vol. & 1996 Supp.) which reads as follows:

**§ 8–201. Definitions.**

(e) *Marital Property.*—(1) "Marital property" means the property, however titled, acquired by 1 or both parties during the marriage.

\*     \*     \*     \*     \*     \*

(3) ... "marital property" does not include property:

(i) acquired before the marriage;

\*     \*     \*     \*     \*     \*

or (iv) directly traceable to any of these sources.

---

**8.** The court arrived at this conclusion as follows: "That portion of the annuity (calculated at 240 months, at $500 per month) to which he would have been entitled from 1988 until April, 1995 is $44,000 (88 months at $500)."

Mr. Lowery maintains that his workers' compensation claims constituted a property interest. Because the injury occurred before the marriage, his claims, and the property rights derived therefrom, were acquired by appellant before the parties were married. Because marital property does not include property acquired before the marriage, Mr. Lowery contends that his workers' compensation claims, and the settlement check and annuity directly traceable to them, were not marital property.

Appellant also seeks to distinguish *Queen v. Queen*, 308 Md. 574, 521 A.2d 320 (1987), the lone Maryland authority on whether workers' compensation awards constitute marital property. The Queens were married in 1964. In 1982, Mr. Queen was injured while at work. *Id.* at 576, 521 A.2d at 321. One month prior to Mrs. Queen's filing for divorce in 1984, Mr. Queen received a lump sum workers' compensation award for permanent partial disability. The circuit court granted Mrs. Queen's prayer for an absolute divorce and subsequently determined that the lump sum permanent partial workers' compensation award was marital property. *Id.* at 576, 521 A.2d at 322. This decision was vacated by the Court of Appeals. The Court held that only that portion of Mr. Queen's permanent partial disability award that compensated for loss of earning capacity during the marriage constituted marital property subject to equitable distribution. *Id.* at 586–87, 521 A.2d at 327.

As Mr. Lowery is quick to point out, Mr. Queen's award was for an injury which occurred during the marriage, while appellant's award related to an injury sustained prior to the marriage. Thus, according to appellant, *Queen* is not controlling. The essence of appellant's position is that the time of the accrual of the right to recovery should be determinative as to whether a workers' compensation claim is marital property. Because his injury occurred and his accompanying right to assert a workers' compensation claim accrued prior to the parties' marriage, appellant argues that the 1995 settlement which relates to that injury should not be characterized as

marital property.[9]

At first blush appellant's argument regarding *Queen* is appealing. A mechanical application of § 8–201(e)(3) produces the result he desires. Further, our research uncovered at least one uncited opinion, based on facts analogous to the case at bar, from another jurisdiction supporting appellant's contention. *In re Marriage of Drone,* 217 Ill.App.3d 758, 160 Ill.Dec. 601, 577 N.E.2d 926 (1991). In *Drone,* the Illinois intermediate appellate court adopted the position that the time of accrual of a workers' compensation claim is dispositive on the issue of whether proceeds derived from that claim are marital property. One year after the Drones were married, Mr. Drone received a $37,000 settlement from a workers' compensation claim for injuries he sustained prior to the marriage. The appellate court agreed with Mr. Drone's contention that the award was separate property because the right to the benefits accrued prior to the parties' marriage.

Mr. Lowery essentially asks this Court to adopt what has become recognized as the "mechanistic approach" for determining whether a workers' compensation settlement or award should be characterized as marital property. Under this approach, a workers' compensation settlement or award is deemed marital only if the right to assert the claim accrued during the marriage. Jurisdictions which apply the mechanistic approach base their reasoning almost entirely upon the definition of marital property contained in their property disposition statutes which exclude property acquired before the marriage. Other cases adopting the mechanistic approach include the following: *Johnson v. Johnson,* 638 S.W.2d 703 (Ky.1982); *Smith v. Smith,* 113 Mich.App. 148, 317 N.W.2d 324 (1982); *Orszula v. Orszula,* 292 S.C. 264, 356 S.E.2d 114 (1987).

---

**9.** It was asserted at oral argument that the settled claims, of necessity or obviously, were for a worsening of appellant's condition created by the 1976 accidental injury. Due to the previously noted inadequacies in the record of this case, we are unable to confirm whether that is so.

· Nevertheless, a closer examination of the Maryland Court of Appeals's opinion in *Queen* indicates that the approach taken in *Drone,* and advocated by appellant here, does not comport with Maryland jurisprudence on this question. In its opinion, the Court in *Queen* considered authority from other jurisdictions having equitable distribution provisions in their marital property statutes which held that the date the workers' compensation claim accrued determined its classification as marital or not. 308 Md. at 582, 521 A.2d at 324–25.[10] In its holding, the *Queen* Court chose, instead, to focus on the purpose of the benefits as being determinative of whether a · particular workers' compensation settlement or award· was marital ·property. The *Queen* Court determined that to the extent that a workers' compensation award compensates for *loss of earning capacity during the marriage,* it is marital property.

> In determining whether the permanent partial disability award at issue in this case is marital property "acquired" during the marriage, we consider not only the date of the award, but also the nature of the benefit which it represents. *Id.* at 585, 521 A.2d at 326.

Accordingly, the *Queen* Court distinguished between a permanent disability and a temporary one, stressing that a permanent disability award is designed to compensate for a loss of . future earning capacity.

> Because the Workmen's Compensation Act ... requires employers to provide such coverage for their employees, workers' compensation benefits constitute a type of employment related benefit which replaces the common-law right of employees to bring tort actions against the employers for job-related injuries.

---

**10.** The Court cited *Goode v. Goode,* 286 Ark. 463, 692 S.W.2d 757, 758 (1985); *In re Marriage of Thomas,* 89 Ill.App.3d 81, 44 Ill.Dec. 430, 431, 411 N.E.2d 552, 553 (1980); *Smith v. Smith,* 113 Mich.App. 148, 317 N.W.2d 324, 326 (1982); *Hughes v. Hughes,* 132 N.J.Super. 559, 334 A.2d 379, 382 (1975).

The amount and duration of workers' compensation benefits depend on the injury sustained by the employee. Injuries are classified under the Workmen's Compensation Act ... according to whether they are: 1) partial or total; and 2) temporary or permanent.... A temporary, as distinguished from permanent disability, exists "until the injured workman is as far restored as the permanent character of the injuries will permit." *Jackson v. Bethlehem–Fairfield Shipyard,* 185 Md. 335, 339, 44 A.2d 811 (1945). Differentiating between temporary and permanent disabilities, several courts have observed that temporary disability payments are a substitute for lost wages during the temporary disability period, while permanent disability is for permanent bodily impairment and is designed to indemnify for the insured employee's impairment for future earning capacity. Thus, these courts indicate that permanent disability is not based solely on loss of wages but is based on actual incapacity to perform the tasks usually encountered in one's employment, and on physical impairment of the body that may or may not be incapacitating. *See In re Marriage of Robinson,* ... 54 Cal.App.3d [682,] 685–86, 126 Cal.Rptr. 779 [ (1976) ]; *Russell v. Bankers Life Co.,* 46 Cal.App.3d 405, 415–16, 120 Cal.Rptr. 627 (1975).

\* \* \* \* \* \*

Turning to the facts of the present case, we note that the award was received approximately one year before the couple divorced. We note also that the purpose of the Workmen's Compensation Act is to assist workers and their families, *Queen v. Agger,* 287 Md. 342, 343, 412 A.2d 733 (1980), and that the Marital Property Act should be construed liberally to effect its broad remedial purpose. *Harper v. Harper,* 294 Md. 54, 64, 448 A.2d 916 (1982). Nonetheless, we hold that *only the portion of the husband's award compensating for loss of earning capacity during the marriage is marital property subject to equitable distribution by the trial judge.* 308 Md. at 585–87, 521 A.2d at 326–27 (emphasis added).

In addition, the Court concluded that the Legislature did not intend for the non-injured spouse to share in the injured spouse's workers' compensation award beyond the period the parties were married. *Id.* at 587, 521 A.2d at 327.

■ Based upon our examination of the language quoted above, we read *Queen* as holding that the purpose of the benefits, rather than the timing of the accrual of the underlying claim or the award/settlement, is determinative in characterizing a workers' compensation settlement or award as marital or separate property. This method is now recognized as the "analytic approach." [11] Our analysis of case law from other jurisdictions indicates that this is the modern and prevailing rule on this issue. Thus, if the purpose of the settlement or award is to compensate a person for lost wages during the marriage or medical expenses previously paid from marital assets, then the settlement or award is characterized as marital property. Conversely, if the award compensates for lost premarital or post-marital wages or for medical expenses paid from separate funds, then the award should be characterized as non-marital. *See, e.g., In re Marriage of Smith,* 817 P.2d 641 (Colo.App.1991); *Weisfeld v. Weisfeld,* 545 So.2d 1341 (Fla.1989); *Dees v. Dees,* 259 Ga. 177, 377 S.E.2d 845 (1989); *Cummings v. Cummings,* 540 A.2d 778 (Me.1988); *Gerlich v. Gerlich,* 379 N.W.2d 689 (Minn.App. 1986); *Pauley v. Pauley,* 771 S.W.2d 105 (Mo.App.1989); *Lentini v. Lentini,* 236 N.J.Super. 233, 565 A.2d 701 (1989); *Freeman v. Freeman,* 107 N.C.App. 644, 421 S.E.2d 623

---

11. For a sampling of opinions from other jurisdictions explicitly recognizing the "mechanistic/analytic" distinction see, *Weisfeld v. Weisfeld,* 545 So.2d 1341, 1344–45 (Fla.1989); *Mistler v. Mistler,* 816 S.W.2d 241, 246–47 (Mo.App.1991); *Freeman v. Freeman,* 107 N.C.App. 644, 651–53, 421 S.E.2d 623, 627–28 (1992); *Crocker v. Crocker,* 824 P.2d 1117, 1119–23 (Okla.1991).

*Queen* has been cited consistently as falling within the "analytic" camp. *See, e.g., Weisfeld v. Weisfeld,* 513 So.2d 1278, 1281 (Fla.App. 1987), *aff'd,* 545 So.2d 1341 (Fla.1989); *In re Marriage of Waggoner,* 261 Ill.App.3d 787, 199 Ill.Dec. 844, 847, 634 N.E.2d 1198, 1201 (1994); *Crocker,* 824 P.2d at 1121–22; *Mistler, supra; Gibson–Voss v. Voss,* 4 Neb.App. 236, 241, 541 N.W.2d 74, 78 (1995); *Freeman, supra; Thompson v. Thompson,* 642 A.2d 1160, 1163 (R.I.1994).

(1992); *Hartzell v. Hartzell,* 90 Ohio App.3d 385, 629 N.E.2d 491 (1993); *Crocker v. Crocker,* 824 P.2d 1117 (Okla.1991); *Kirk v. Kirk,* 577 A.2d 976 (R.I.1990). *See generally* Brett R. Turner, *Equitable Distribution of Property* § 6.19 (2d ed. 1994 & 1995 Supp.); Annotation, *Divorce and Separation: Workers' Compensation Benefits as Marital Property Subject to Distribution,* 30 A.L.R.5th 139 (1995).

■ Furthermore, our analysis of whether workers' compensation benefits constitute marital property is not dependent on whether the benefits accrue to the employee in the form of an award by the Workers' Compensation Commission or a settlement entered into by the parties that is ultimately approved by the Commission pursuant to Md.Code Ann., Labor & Employment § 9–722. The purpose of § 9–722 is clearly to comport with the primary objective of the workers' compensation system, the protection of the injured worker. *B. Frank Joy Co. v. Isaac,* 333 Md. 628, 642, 636 A.2d 1016 (1994). To further this purpose, § 9–722 prescribes that the approval of all workers' compensation claim settlements is placed in the Commission's hands.

The approval of a settlement and its terms rests within the sound discretion of the Commission. Indeed, the Commission is not bound by the terms agreed upon by the parties. Instead, a final compromise and settlement must contain whatever terms and conditions the Commission deems proper. *Id.* As such, § 9–722 calls upon the Commission to employ its unique expertise when deciding whether to approve a proposed settlement. *Id.* at 643, 636 A.2d 1016 (quoting Richard P. Gilbert and Robert L. Humphreys, Jr., Maryland Workers' Compensation Handbook § 7.10, at 149–50 (footnotes omitted)). Clearly, § 9–722 contemplates that in approving a proposed settlement, the Commission is not confined to a ministerial capacity in which it "rubber-stamps" settlements presented to it for approval. On the contrary, § 9–722 envisions that, even in the case of settlement approval, the Commission, when it deems necessary and appropriate, may conduct an inquiry commensurate with that undertaken for a

complete hearing to determine whether a claimant is entitled to workers' compensation benefits.

Finally, our research unearthed two recent opinions from other jurisdictions that hold the portion of a workers' compensation award or settlement compensating the employee for lost wages or future earning capacity during the parties marriage was marital property, *even if the injury upon which the award was based occurred prior to the marriage.* For instance, in *Jessee v. Jessee,* 883 S.W.2d 507 (Ky.App.1994) the parties were wed in 1984. At the time of the marriage, Mr. Jesse was attempting to obtain workers' compensation benefits for black lung disease that he contracted while working as a coal miner. In 1986, Mr. Jesse received a lump sum award of $74,633.50. The couple separated in 1992. Upon dissolving the marriage, the trial court concluded that the compensation claim was based on an injury sustained in 1974 and covered the period from 1974 to 1986 and that the lump sum payment was for back pay. *Id.* The Court of Appeals of Kentucky held that the portion of the award that represented those years that the parties were married constituted marital property. *Id.* at 509.

Likewise, in *Gibson–Voss v. Voss,* 4 Neb.App. 236, 541 N.W.2d 74 (1995), the husband suffered a work related injury in 1986. The parties were married in 1987. In 1989, he received a $37,000 workers' compensation settlement. The Vosses separated in 1993 and a divorce decree was entered in 1994. *Id.* at 237–38, 541 N.W.2d at 76. The *Gibson–Voss* Court held that the workers' compensation settlement was marital property to the extent it compensated the marital unit for loss of income during the marriage. To the extent that the award compensates the employee for loss of premarriage or post-divorce earnings, the court held that it was that person's separate property. *Id.* at 241–42, 541 N.W.2d at 77–78.

Based on our analysis of *Queen* and our examination of authority from other jurisdictions, we conclude that although Mr. Lowery's injury that apparently underlaid the settled claims occurred prior to the parties' marriage, the ensuing

workers' compensation settlement/award would have been characterized as marital property to the extent that it compensated Mr. Lowery for lost wages or future earning capacity during the marriage or medical expenses paid for out of marital assets.

## II.

Mr. Lowery further contends that even if his settlement is properly characterized as partly marital, Mrs. Lowery failed to meet her burden of proof as to which portion of the settlement qualified as marital property. He claims that appellee failed to produce any evidence as to which portion of the settlement constituted lost wages or future earning capacity.

Appellee counters by asserting that appellant chose to settle his claims, thereby obviating the need for further hearings for purposes of determining the individual components of his claim. According to appellee, Mr. Lowery's decision to settle precluded a determination of which portion of the settlement constituted compensation for lost earnings during the marriage. Mrs. Lowery further contends that the trial court could have easily and properly presumed that the entire award was for the purpose of compensation for lost wages. She contends that Mr. Lowery is not a candidate for vocational rehabilitation and notes that appellee admitted that he had free lifetime medical benefits through Kelly–Springfield.[12] Finally, appellee asserts that as of 1987, Mr. Lowery had collected all the sums due him under the prior workers' compensation awards relative to his three claims. Appellee, therefore, conjectures that the only reasons Mr. Lowery's employer or its insurer would consider paying additional money to Mr. Lowery were for either a post–1987 temporary total disability or a reopening of his case due to a worsening of his condition, pursuant to Md.Code Ann., Labor & Employment § 9–635. In either event, appellee contends that the settle-

---

12. Mr. Lowery's medical benefits were subject to an annual deductible of $500.00.

ment was clearly compensation for lost wages since 1987. Accordingly, appellee's position is that the trial judge correctly calculated the portion of the settlement that was marital property.

■ Because a determination of whether something is marital property is a question of fact for the court to resolve, our review of the trial court's conclusions is governed by the clearly erroneous standard. *See Freese v. Freese,* 89 Md.App. 144, 153, 597 A.2d 1007, 1011, *cert. denied,* 325 Md. 396, 601 A.2d 129 (1992). *See also Hollander v. Hollander,* 89 Md.App. 156, 163, 597 A.2d 1012, 1016 (1991). The circuit court, in its Memorandum and Judgment, reasoned as follows:

> [Appellant] continued to be employed after his injury, retiring in 1987. [Since 1987], [h]e received no benefits until the settlement in 1995. That portion of the annuity (calculated at 240 months, at $500 per month) to which he would have been entitled from 1988 until April, 1995 is $44,000 (88 months at $500). That sum was compensation for loss of earning capacity during the marriage. Hence, appellee] is entitled to consideration of that amount in the calculation of a monetary award.

Despite the trial court's conclusions, we conclude that the record contained an insufficient factual predicate upon which the court could have based its conclusion that $44,000 of Mr. Lowery's settlement should be characterized as marital property. Although such evidence as was before the court implied that some portion of Mr. Lowery's settlement may have been impressed properly with a marital property interest, the imprecision of, and gaps in, that evidence undercut the finite calculus applied by the chancellor.

■ Where the non-injured spouse is claiming a portion of the other spouse's workers' compensation settlement or award as marital property, it is important for that spouse, and the court, to be able fully to explore and, if possible, label the components of the settlement or award as compensation for past lost wages, future loss of earning capacity, losses to the marital estate, future medical expenses, or damages for injury

to the property or person. *See, e.g., In re Marriage of Blankenship,* 210 Mont. 31, 682 P.2d 1354 (1984); *Gibson–Voss,* 4 Neb.App. at 241–42, 541 N.W.2d at 78–79; *Crocker,* 824 P.2d at 1121–22. Thus, although we shall vacate the judgment of the circuit court for the reasons stated, we are moved to remand this matter to the circuit court for further proceedings to redetermine an appropriate monetary award, if any. We presume that the parties, and particularly Mrs. Lowery, will be afforded the opportunity to engage in appropriate discovery, in advance of an evidentiary hearing, so that all available information bearing on this matter can be placed before the trial judge. We are moved to this disposition because, as we are announcing in this opinion a clarification of the holding in *Queen v. Queen,* fundamental fairness and the potential equities of the instant case compel that the parties and the court be accorded an opportunity to determine, with more precision, whether any, and what, portion of Mr. Lowery's settlement constitutes marital property, and the effect of that determination in calculating an equitable monetary award, if any.

## III.

Based on our holding in Part II, *supra,* it is not necessary to reach the merits of appellant's third contention that the court committed reversible error in granting appellee a monetary award which exceeded the value of the marital property.

JUDGMENT OF THE CIRCUIT COURT FOR ALLEGANY COUNTY ENTERED ON 11 DECEMBER 1995 VACATED; CASE REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION; COSTS TO BE PAID ONE–HALF BY APPELLANT AND ONE–HALF BY APPELLEE.