989 A.2d 771

Anthony MURRAY

v.

Teresa MURRAY.

No. 2432 Sept.Term, 2007.

Court of Special Appeals of Maryland.

Feb. 24, 2010.

554

Wm. Ray Ford, Camp Springs, MD, for Appellant.

Josue Pierre, Largo, MD, for Appellee.

Panel: JAMES R. EYLER., ZARNOCH and J.
FREDERICK SHARER (Retired, Specially Assigned), JJ.

J. FREDERICK SHARER, Judge (Retired, Specially Assigned).

The parties to this appeal, appellant, Anthony Murray, and appellee, Teresa Murray, were divorced absolutely by judgment of the Circuit Court for Montgomery County, entered on September 19, 2007. Of primary concern in this appeal is the trial court's disposition of marital property, particularly its treatment of funds received by Teresa in settlement of an employment discrimination claim.

In his appeal, Anthony presents four questions for our consideration, which we have distilled and rephrased as:[1]

1.   Whether the trial court erred in ruling that proceeds from Teresa's employment discrimination claim were not marital property.

2.   Whether the trial court erred in its unequal division of the proceeds of the sale of the marital home.

For the reasons that follow, we shall vacate the judgment of the circuit court and remand this matter for further appropriate proceedings.

---

1.   In his opening brief, appellant asks:
    1.   Did the trial court err when it found that appellant failed to produce evidence that the money received by appellee in settlement of her employment discrimination claim was property acquired during the marriage, and failed to produce evidence of the value of that property?
    2.   Did the trial court err when it limited cross examination on the issue of economic loss claimed by Mrs. Murray in her employment discrimination complaint, and when it found it could not allocate the settlement award into various components of damages?
    3.   Did Mrs. Murray fail to meet her burden of proof, and did the trial court err when it failed to find all the proceeds of the settlement to be marital property?
    4.   Did the trial court err when it effectively granted Mrs. Murray a $13,000 monetary award?

## FACTS and PROCEEDINGS[2]

Anthony Murray and Teresa Murray (the plaintiff below) were married on May 20, 1998. They are the parents of two children, ages ten and four at the time of the trial.[3] Both parties were employed: Teresa as an attorney, Anthony as a clerk with the Internal Revenue Service.

The litigation was initiated by Teresa's complaint for absolute or limited divorce on the ground of constructive desertion. Anthony answered and filed a counter-complaint alleging desertion. Ultimately, the parties stipulated, and the trial court found, that they had voluntarily lived separate and apart, without interruption, for 12 months prior to August 16, 2006. The divorce was granted on that ground.

### 1. The Employment Discrimination Settlement—Marital Property?

During the marriage, Teresa was employed as an attorney by O'Donoghue & O'Donoghue in Washington, D.C. Her employment with that law firm was terminated, by her employer, effective December 31, 2002. Thereafter, Teresa filed an employment discrimination suit against the law firm, and individual partners and employees of the firm, in the Superior Court of the District of Columbia. Her complaint was founded in alleged discriminatory and retaliatory practices by the firm and its employees, in violation of the District of Columbia Family and Medical Leave Act, as well as breach of contract. She sought damages for lost wages and salary, compensatory damages for claims under the District of Columbia Human Rights Act, consequential damages allowable under the Family and Medical Leave Act, and punitive damages.

---

**2.** Our recitation of the facts is taken largely from appellant's opening brief. Appellee, in her brief, sets forth no recitation of facts. Hence, we proceed on the assumption that she does not contest the underlying facts as asserted by appellant.

**3.** Custody and visitation issues were before the circuit court, but are not raised in this appeal.

Teresa's claims were resolved by the execution of a settlement agreement and general release, effective July 21, 2006 ("the settlement agreement"). Significant among the terms of the settlement agreement was the payment to Teresa of $550,000. The net proceeds of the settlement were paid to Teresa, after expenses of suit and counsel fees, in two installments—$425,000 within 14 days of July 21, 2006, and $125,000 on January 2, 2007. The record does not disclose the actual net amount paid to her, but the trial court found that, at the time of the August 15–16, 2007 merits divorce trial, Teresa had retained $274,000 of the settlement in the form of two $50,000 college savings plans and $174,000 in a bank account. Also, in the June 8, 2007 joint statement filed by the parties pursuant to Md. Rule 9–207, (stating that the parties were not in agreement as to whether the settlement proceeds were marital or non-marital property), Teresa asserted that she retained $300,000 from the settlement proceeds.

As to the settlement proceeds, in a written Opinion and Order dated September 19, 2007, the trial court found:

> Testimony at trial indicated that, several months after the parties separated, [Teresa] settled a discrimination lawsuit she had filed against her former employer. The lawsuit was filed during the marriage, regarding alleged practices by the employee that occurred during the marriage. [Anthony] contends that the settlement ... is marital property. [Teresa] contends that the settlement does not specify which portion represents back pay, lost wages, pain and suffering, or other elements of damage. Therefore, she claims, it cannot be categorized as marital property.

> There is nothing in the Marital Property Act indicating a legislative preference for the classification of property as marital, as opposed to non-marital. The party who asserts a marital interest in property bears the burden of producing evidence as to the identity and value of such property. *Melrod v. Melrod,* 83 Md.App. 180, 574 A.2d 1 (1990).

> In *Queen v. Queen,* 308 Md. 574, 521 A.2d 320 (1987), appellant received a Workmen's Compensation Act award one year before divorce, for injuries sustained in an employ-

ment-related accident that occurred during the marriage. The Court of Appeals held that only the portion of the award representing loss of earning capacity during the marriage was marital property, subject to equitable distribution. In this regard, the [C]ourt said: "Due to the personal nature of the injuries giving rise to a permanent partial disability award, we cannot conclude that the General Assembly intended a noninjured spouse to share in the compensation for the injured spouse's loss of future earning capacity representing a time period beyond the dissolution of the marriage."

The court has examined the First Amended Complaint filed in the discrimination case; [Anthony] is not a party, and there was no claim for loss of consortium. The Settlement Agreement and General Release does not name [Anthony], nor delineate what the $550,000 represents, other than a settlement amount. Because it is [Anthony's] burden to identify and value the property he seeks to classify as marital, there is simply no credible evidence from which the court can conclude that this sum is marital property.

## Standard of Review

Our review of a decision of a trial court sitting without a jury is governed by Md. Rule 8–131(c):

(c) **Action tried without a jury.** When an action has been tried without a jury, the appellate court will review the case on both the law and the evidence. It will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses.

"The deference shown to the trial court's factual findings under the clearly erroneous standard does not, of course, apply to legal conclusions." *Karsenty v. Schoukroun,* 406 Md. 469, 502, 959 A.2d 1147 (2008) (quoting *Griffin v. Bierman,* 403 Md. 186, 195, 941 A.2d 475 (2008)). "We, instead, review *de novo* the trial court's legal conclusions." *Griffin,* 403 Md. at 195, 941 A.2d 475. *See also, Alston v. Alston,* 331 Md. 496,

504, 629 A.2d 70 (1993) ("a trial court must exercise its discretion in accordance with correct legal standards.").

## DISCUSSION

We start with the well-established proposition that only marital property is subject to the equitable distribution provisions of Md.Code (2006 Repl.Vol.), Family Law Article ("FL") §§ 8–201, *et seq.* Marital property is "all property, however titled, acquired by 1 or both parties during the marriage." FL § 8–201(e)(1).

Before this Court, Anthony renews the arguments he pressed below—that the entire proceeds from the settlement of Teresa's employment discrimination claims are marital property, and that the trial court erred in not including those funds in its identification of marital property subject to equitable distribution via a monetary award.

### Three Significant Cases: *Queen, Lowery,* and *Newborn*

The question of whether all or part of employment discrimination and/or wrongful discharge settlement proceeds or awards, received by a spouse during the marriage, are marital property has not been addressed by our courts. Before our more extensive discussion of the analysis to be applied to the facts before us, we take time to summarize the three reported Maryland cases that bear upon that analysis: *Queen v. Queen,* 308 Md. 574, 521 A.2d 320 (1987), *Lowery v. Lowery,* 113 Md.App. 423, 688 A.2d 65 (1997), and *Newborn v. Newborn,* 133 Md.App. 64, 754 A.2d 476 (2000). It is those cases upon which appellant relies to support his contention that the settlement proceeds ought to have been found to be marital property. In each of those cases, the courts have taken up the status of workers' compensation and personal injury awards, *vis a vis* marital property.

David Queen, during his marriage, suffered a work-related injury for which he received, also during the marriage, a lump sum permanent partial disability settlement. The trial court determined the settlement proceeds to be marital property.

The Court of Appeals undertook a review of decisions of other jurisdictions dealing with whether, and to what extent, workers' compensation benefits are marital property. After doing so, the Court observed:

> In determining whether the permanent partial disability award at issue in this case is marital property "acquired" during the marriage, we consider not only the date of the award, but also the nature of the benefit which it represents.

308 Md. at 585, 521 A.2d 320.

The Court concluded, *id.* at 586–87, 521 A.2d 320:

> [W]e hold that only the portion of the husband's award compensating for loss of earning capacity during the marriage is marital property subject to equitable distribution by the trial judge. Due to the personal nature of the injuries giving rise to a permanent partial disability award, we cannot conclude that the General Assembly intended a noninjured spouse to share in the compensation for the injured spouse's loss of future earning capacity representing a time period beyond the dissolution of the marriage.

Because the record did not "disclose the information essential to computing the portion of the husband's award, if any, allocable as marital property," the Court remanded for additional fact finding.

*Lowery v. Lowery* also dealt with the status of a workers' compensation lump sum benefit payment received during the marriage although, in contrast to *Queen,* Jack Lowery's benefits were for injuries that occurred prior to the marriage. As did the Court of Appeals in *Queen,* this Court remanded for additional fact finding. We opined:

> Thus, if the purpose of the [workers' compensation] settlement or award is to compensate a person for lost wages during the marriage or medical expenses previously paid from marital assets, then the settlement or award is charac-

tcrized as marital property. Conversely, if the award compensates for lost premarital or post-marital wages or for medical expenses paid from separate funds, then the award should be characterized as non-marital.

113 Md.App. at 434, 688 A.2d 65.

Three years later in *Newborn v. Newborn*, the issue before this Court was the marital or non-marital status of the proceeds of a personal injury settlement received by the husband, Herbert Newborn, for injuries suffered during the marriage. In this regard, we held that the treatment of personal injury settlements or awards should be no different than the treatment that had been afforded to workers' compensation awards in *Queen* and *Lowery*.

As implicitly recognized by Judge Chasanow in *Blake [v. Blake*, 341 Md. 326, 670 A.2d 472 (1996)], there is no good reason why we should use the analytical approach[4] when considering workers' compensation awards and use a differ-

---

**4.** The analytical approach "asks what the award, settlement, or judgment was intended to replace and looks to the nature of the personal injury award or settlement to explain why the property is the separate asset of a spouse or why it should be considered marital subject to equitable distribution. The approach was endorsed by Judge Chasanow in *Blake* and also in both *Queen* and *Lowery* (in a workers' compensation context). Recompense to the injured spouse for non-economic damages—such as pain, suffering, disability, and loss of ability to lead a normal life—are not considered marital property." *Newborn*, 133 Md.App. at 90, 754 A.2d 476. By comparison, under what has been referred to as the "mechanical" approach to the classification of compensatory settlements/awards, a trial court reads the definition of marital property literally. Judge Salmon explained in *Newborn*, 133 Md.App. at 89, 754 A.2d 476, under this view, "since the jury verdict or settlement received by the injured spouse as a result of personal injury was acquired during marriage and comes within none of the enumerated exceptions to the statutory definition of marriage, it [is] marital property." A third classification, the "unitary" approach is the "polar opposite" of the mechanical approach. *Id.* There, none of the recovery for personal injuries received during marriage is considered marital property because the recovery arises as a result of circumstances unrelated to any marital effort to acquire assets. *Id.* at 90, 754 A.2d 476. *See* Brett R. Turner, *Equitable Distribution of Property* § 6:57 (3d ed. 2005 & 2008–09 Supp.).

ent approach when considering a recovery by a spouse that comes about as a result of a tort judgment or settlement. *Newborn,* 133 Md.App. at 93, 754 A.2d 476.

■ As were *Queen* and *Lowery, Newborn* was remanded to the trial court. Although we determined that Mrs. Newborn had failed to meet her burden of proving[5] that the tort recovery funds were marital property, because

> the ... issue resolved in this case was one of first impression, we think that fundamental fairness requires us to remand the case to give Ms. Newborn an opportunity to put on evidence to prove what portion of the personal injury settlement was marital.

*Id.* at 96, 754 A.2d 476.

### Analytical Approach Adopted

■ Under what has become styled in such cases as the analytical approach, in the absence of a statutory definition of marital property that specifically addresses whether all or part of such settlement proceeds or awards received by the claimant spouse during the marriage are marital property, that determination turns on the underlying nature of the damages that the recovery is intended to remedy, rather than the mere timing of the underlying claim or settlement/award. *See Blake v. Blake,* 341 Md. 326, 346–47, 670 A.2d 472 (1996); *Queen,* 308 Md. at 585, 521 A.2d 320; *Newborn,* 133 Md.App. at 90–91, 754 A.2d 476; *Lowery,* 113 Md.App. at 434, 688 A.2d 65; Turner, *supra,* § 6:55; Annotation, *Divorce and Separation: Determination of Whether Proceeds From Personal Injury Settlement or Recovery Constitute Marital Property,* 109 A.L.R.5th 1, 35–54, § 5[a] (2003).

■ As noted, Maryland courts have adopted the analytical approach in the context of both personal injury tort and workers' compensation claims. *See Blake,* 341 Md. at 344, 670

---

5. A party asserting a marital interest in property bears the burden of producing evidence of the identity of the property and of its value. *Odunukwe v. Odunukwe,* 98 Md.App. 273, 633 A.2d 418 (1993).

A.2d 472 (applying analytical approach to personal injury settlement proceeds); *Queen,* 308 Md. at 586–87, 521 A.2d 320; *Lowery,* 113 Md.App. at 434–35, 688 A.2d 65; *Newborn,* 133 Md.App. at 92–93, 754 A.2d 476. Only that portion of such claim proceeds which compensates the claimant spouse for lost wages or earning capacity during the marriage, medical expenses paid from marital funds, or for joint loss of consortium, is marital property subject to equitable distribution. *Blake,* 341 Md. at 344–45, 670 A.2d 472 (holding only proven portion of liquidated personal injury settlement for "loss to the marital unit" was marital property); *Queen,* 308 Md. at 586–87, 521 A.2d 320 (same as to workers' compensation award); *Lowery,* 113 Md.App. at 434, 688 A.2d 65 (stating "if the purpose of the settlement or award is to compensate [the injured spouse] for lost wages during the marriage or medical expenses previously paid from marital assets, then [it] is characterized as marital property."); *Newborn,* 133 Md.App. at 93, 754 A.2d 476 (holding personal injury proceeds "paid to reimburse the [marital unit] for medical expenses ... [marital] wages ... and ... for their *joint* claim for loss of consortium" is marital property) (emphasis in original).

▮ By contrast, to the extent the proceeds compensate the injured spouse for future post-marital wages, bodily injury, or pain and suffering, they constitute the non-marital property of the recipient spouse. *Blake,* 341 Md. at 344, 670 A.2d 472; *Queen,* 308 Md. at 587, 521 A.2d 320. The rationale for treating economic and non-economic loss differently for purposes of identifying the marital property pool subject to equitable distribution, is that damages for bodily pain, suffering, and loss are "uniquely personal" to the injured spouse. *Unkle v. Unkle,* 305 Md. 587, 596, 505 A.2d 849 (1986). On the other hand, damages for lost wages or earning capacity during the marriage, paid medical expenses and consortium loss all compensate a loss incurred by the "marital entity." *Blake,* 341 Md. at 345, 670 A.2d 472.

▮ This reasoning is sound and we apply it here. We see no reason why such proceeds or awards for the same types of economic and non-economic loss as those recovered in a

personal injury or workers' compensation claims should be treated any differently under Fam. Law Art. 8–201(e)(1). Like a personal injury claim, an employment-related discharge claim also lies in tort. *See generally, Newell v. Runnels,* 407 Md. 578, 967 A.2d 729 (2009); *Adler v. Am. Standard Corp.,* 291 Md. 31, 432 A.2d 464 (1981). In *Newborn,* 133 Md.App. at 92–93, 754 A.2d 476, we likewise found support for the adoption of the analytical approach to determine the marital property status, if any, of personal injury settlements and awards in the earlier use of this approach by the Court of Appeals as to Queen's workers' compensation award. In doing so, Judge Salmon, writing for the *Newborn* Court, aptly observed: "there is no good reason why we should use the analytical approach when considering workers' compensation awards and use a different approach when considering a recovery by a spouse that comes about as a result of a tort judgment or settlement." *Id.* Furthermore, in *Lowery,* 113 Md.App. at 433, 688 A.2d 65, we observed at that time that the analytical approach was "the modern and prevailing rule," and later in *Newborn,* as being a doctrine "in its ascendency." 133 Md. App. at 91, 754 A.2d 476. *See also,* 109 ALR 5th § 5[a] at 35; Turner, *supra,* § 6:55, 318 n. 3; Gary M. Skoloff, et al., 2 *Valuation and Distribution of Marital Property* § 23.08[1][a] 134 (2009) ("recent trend in equitable distribution states has been toward the analytical approach."). Skoloff lists 20 equitable distribution states which have, thus far, adopted the analytical approach for determining the marital or non-marital status of various types of compensatory recovery damages. *Id.* at § 23.08[1][b] 136.1–138.

We observe that our holding is consistent with the decisions of other jurisdictions which have also employed the same classification approach, whether analytical, mechanical or unitary, to determine whether a spouse's settlement proceeds or award is marital property or the separate property of the injured spouse, irrespective of whether the recovery was in tort or resulting from a workers' compensation claim.[6] *See*

---

6. Our research has uncovered only Colorado and Indiana as the exception. *See In re Marriage of Smith,* 817 P.2d 641 (Colo.App.1991)

Turner, § 6:59, 341 ("most states apply the same approach to classification of both personal injury proceeds and worker's compensation proceeds. This is a logical result . . .").

Accordingly, we hold that the analytical approach is to be employed by the trial court to determine whether all or part of employment-related discharge or discrimination settlement proceeds or awards constitute marital property.

### Undifferentiated Settlement Proceeds.

██ Because the type of compensatory loss determines the classification of the recovery proceeds as being marital property or the separate property of the claimant spouse, the trial court must closely examine the underlying nature of that loss. *See Queen*, 308 Md. at 587, 521 A.2d 320; *Newborn*, 133 Md.App. at 95–97, 754 A.2d 476; *Lowery*, 113 Md.App. at 438–39, 688 A.2d 65. Where the settlement proceeds or an award do not allocate between economic and non-economic damages, as in this case, the trial court must, nonetheless, review the evidence presented regarding the underlying case and make its own allocation as to the different types of loss. *Id.* Other jurisdictions have also required the trial court to identify the nature of damages of unallocated settlement proceeds or awards. *See Parde v. Parde*, 258 Neb. 101, 602 N.W.2d 657, 664–65 (1999) (stating trial court was required to analyze the nature and underlying reason for the unallocated personal injury award to determine whether it included lost marital earnings and/or pain and suffering); *Myers v. Myers*, 741

---

(applying the analytical approach to workers' compensation awards and holding that portion of the award which compensates for loss of earning capacity and medical expenses incurred during marriage marital property); *In re Marriage of Fields*, 779 P.2d 1371 (Colo.App.1989) (holding that under the mechanical approach, unliquidated personal injury proceeds are marital property when the cause of action arises during marriage irrespective of the nature of the loss); and *Shannon v. Shannon*, 847 N.E.2d 203 (Ind.Ct.App.2006), *transfer denied*, 869 N.E.2d 452 (Ind.2007) (holding that lump sum workers' compensation award received during the marriage was nonmarital property to the extent it was compensation for postdivorce lost wages even though Indiana otherwise follows the mechanical approach). *See Riddle v. Riddle* 566 N.E.2d 78 (Ind.Ct.App. 1st Dist.1991).

So.2d 274, 280 (Miss.Ct.App.1998) (reversing trial court's finding that personal injury proceeds transmuted into separate property of both spouses and remanding with instructions to allocate the proceeds between economic and non-economic damages); *Marcum v. Marcum*, 116 Ohio App.3d 606, 688 N.E.2d 1085 (1996) (affirming trial court's own allocation of damages to unallocated personal injury lump sum settlement); *Viviano v. Allard*, 197 A.D.2d 210, 611 N.Y.S.2d 666 (1994) (damages from wrongful termination suit could be all or part marital property, remanding for allocation between martial and separate property estates); *Landwehr v. Landwehr*, 111 N.J. 491, 545 A.2d 738, 744 (1988) (stating that in the case of an unallocated award or settlement, "upon the subsequent division of the spouses' property, a matrimonial judge can allocate the lump sum.").

We observe here that the identification of marital and non-marital property is a question of fact and we will not disturb a factual finding unless it is clearly erroneous. *Gordon v. Gordon*, 174 Md.App. 583, 625–26, 923 A.2d 149 (2007). The allocation as to the economic and non-economic loss regarding settlement proceeds or an award recovered in tort or by a workers' compensation claim is also question of fact. *See generally, Newborn*, 133 Md.App. at 93, 754 A.2d 476. The trial court will not be reversed if there is any credible evidence to support its allocation.

As noted, *Queen, Lowery,* and *Newborn* uniformly remanded the property classification at issue to the trial court for additional fact finding to both determine and to allocate the type of loss compensated to the claimant spouse(s) by the settlement proceeds or award and thereby identify what portion, if any, was marital property. In this regard, the Court of Appeals and this Court stressed that on remand, "fundamental fairness" compelled the opportunity for each party to engage in appropriate discovery in order to "fully explore" the possible components of the settlement proceeds or award regarding the issue of allocation. *Newborn*, 133 Md.App. at 96, 754 A.2d 476 (citing *Lowery*, 113 Md.App. at 438, 688 A.2d 65).

■■   Turning to the facts of this case, Teresa's cause of action against her employer arose while the parties were still married and living together. The settlement and receipt of the proceeds also occurred during the marriage. As such, we observe that any portion of the settlement proceeds, labeled on remand by the trial court as being compensation to Teresa for her lost marital wages, would constitute marital property subject, at the court's sole discretion, to a monetary award.

At trial, it was undisputed that, except for $125,000 paid as attorney fees incurred by Teresa in bringing the suit, the remaining $425,000 was unallocated to any purpose or specific loss. Unfortunately, as discussed in detail below, the trial court shut down Anthony's attempt time and time again to present, among other things, Teresa's salary and earnings history. In this regard, Anthony was limited by the trial court to only that discovery information in Teresa's employment claim that she chose to make available to him. As the cross-examination of Teresa reveals, Anthony recognized his need to present evidence relevant to labeling all or part of the settlement proceeds as compensation for Teresa's lost marital wages in order that they be included within the marital property pool. Indeed, in defending the relevance of his exploration as to the nature of the settlement proceeds, the following exchange took place:

> THE COURT: Well, I understood the testimony to be we don't know what's apportioned to what. It's just that—
>
> [COUNSEL FOR ANTHONY]: But that's something that the court's going to have to determine.

The trial court continued, stating that, in its view, the fact that the settlement was unallocated was irrelevant and immaterial:

> THE COURT: But that doesn't make your question any more relevant. I mean, the only testimony I have so far is that there was an agreement signed, there was a settlement reached, there was a sum certain, $150,000 of that, if I recall, was earmarked for attorney's fees, so the rest of it was a lump sum. How does the fact that she earned or

didn't earn a certain amount during some four year [employment] period [before discharge] going to help me determine what the [litigants in the discharge claim] had in mind when they agreed to this lump sum?

In its Opinion and Order, the court found that the settlement agreement did not "delineate what the $550,000 represents, other than a settlement." Ironically, it blamed Anthony for failing to carry his "burden to identify and value the [proceeds] he seeks to classify as marital," concluding "there simply is no credible evidence from which the court can conclude that this sum is marital." [7]

Anthony complains that his cross-examination into the status of the settlement funds was unduly restricted. We agree. Clearly, he was attempting to identify and determine the components of the net settlement. In short, he was attempting to satisfy the second prong of his burden of proof—to identify some particular aspect of the settlement fund as marital.

The Marital Property Act does not indicate a legislative preference for the classification of property as marital, as opposed to non-marital. *Melrod v. Melrod,* 83 Md.App. 180, 194, 574 A.2d 1 (1990). Our case law is clear that the burden of proof as to the classification of property as marital or non-marital rests upon the party who asserts a marital interest in the property, and that party must present evidence as to the identity and value of the property. *Pickett v. Haislip,* 73 Md.App. 89, 97, 533 A.2d 287 (1987), *cert. denied,* 311 Md. 719, 537 A.2d 273 (1998). *See also, Malin v. Mininberg,* 153 Md.App. 358, 428, 837 A.2d 178 (2003) (the party who claims a marital interest in property has the burden of proof as to the claim); *Potts v. Potts,* 142 Md.App. 448, 468, 790 A.2d 703 (2002) (the party seeking the marital interest has the burden of proving identity and value); *Innerbichler v.*

---

7. As we shall discuss, *infra,* Teresa had failed to comply with an order to provide to Anthony certain deposition transcripts and discovery from her underlying tort claim.

*Innerbichler*, 132 Md.App. 207, 227, 752 A.2d 291, *cert. denied,* 361 Md. 232, 760 A.2d 1107 (2000) ("Moreover, the party who asserts a marital interest in property bears the burden of producing evidence as to the identity of the property."); and *Green v. Green,* 64 Md.App. 122, 139, 494 A.2d 721 (1985) (it is the obligation of a party asserting a marital property interest in specific property to produce evidence as to the identity and value of that property).

We are satisfied that, having met his burden of identifying the settlement fund as *potential* marital property, Anthony was entitled to inquire of Teresa the particulars, if any, of the components of the settlement. While we recognize that the rulings of the trial court on the admissibility of evidence are within the sound discretion of the court, in this instance, and on these facts, we believe that Anthony was unduly restricted in his efforts to satisfy his burden of proof. Of course, whether the proffered cross-examination, and review of the underlying tort case discovery, would have enabled Anthony to satisfy the trial court that some, or all, of the settlement was marital property, we cannot say.

The evidentiary errors here caused the trial court to elide the critical process of evaluating the issue of allocation. While this may be easier said than done, we observe, without further comment, that in other analytical approach jurisdictions, trial courts have made their own lost marital wage allocations by calculating the injured spouse's salary multiplied by the time period during the marriage that the claimant spouse was out of work. *See Parde,* 602 N.W.2d at 663. *See also In re Marriage of Tullier,* 989 S.W.2d 607, 611 (Mo.Ct. App.1999). Moreover, in divorce proceedings where a monetary award is sought, Maryland trial courts routinely allocate and trace the source of funds regarding assets for the purpose of identifying whether all or part of an asset is marital property. *See generally, Grant v. Zich,* 300 Md. 256, 270, 477 A.2d 1163 (1984); *Harper v. Harper,* 294 Md. 54, 80–82, 448 A.2d 916 (1982); *Richards v. Richards,* 166 Md.App. 263, 275–76, 888 A.2d 364 (2005).

Additionally, unlike *Newborn,* where a "great deal of time" had passed from the time the settlement was made or received and the divorce trial, making the possibility of the production of evidence necessary for the fact finder to apply the analytical approach to the settlement proceeds "very difficult," that is not the case here. 133 Md.App. at 94, 754 A.2d 476. We also observe that there are no medical expenses, loss of consortium, or bodily injury losses further clouding the court's allocation undertaking.

The parties must be afforded the full and fair opportunity to engage in appropriate discovery, in advance of the allocation evidentiary hearing, so that all available information regarding the underlying claim, settlement and proceeds bearing on allocation can be placed before the trial court. Moreover, because a part of the proceeds may be determined, on remand, to be the non-marital property of Teresa, discovery should also appropriately include information about what she did, or did not do, with the proceeds from the time of her receipt thereof until the time of divorce. In this regard, it is well-settled that non-marital property, especially that in the form of funds, can lose its separate property status as a result, among other things, of its commingling with marital property or by its use in the acquisition of other property. *See Golden v. Golden,* 116 Md.App. 190, 205, 695 A.2d 1231 (1997); *Melrod,* 83 Md.App. at 187–88, 574 A.2d 1.

■■■ While a "trial court is vested with broad discretion in deciding whether to grant a monetary award, [ ] the exercise of that discretion should be informed and based upon reason." *Freese v. Freese,* 89 Md.App. 144, 153, 597 A.2d 1007 (1991). Accordingly, we shall vacate the judgment of the circuit court and remand for further proceedings to redetermine an appropriate monetary award, if any. The trial court's rulings relative to alimony, child support, and attorney fees must also be reconsidered in light of our holding and remand regarding the court's marital property/monetary award findings. *See Turner v. Turner,* 147 Md.App. 350, 400, 809 A.2d 18 (2002) (stating that support, counsel fees and a monetary award are

interconnected; modification of any one of them requires reconsideration of the remainder).

On remand, after the trial court identifies and values the marital portion, if any, of the settlement proceeds, the court must then reconsider the Fam. Law. Art. § 8–205 factors and adjust the equities as the court deems appropriate. In doing so, it should provide sufficient explanation for the appellate courts to confirm the court's consideration of those factors in the exercise of its judicial discretion in ruling on the parties' respective positions.

## The Discovery Problem

The status of the employment discrimination claim as an issue was brought to the trial court's attention early on in the form of a discovery dispute. Teresa filed a motion to compel and for sanctions. Anthony responded with a cross-motion to compel and for sanctions. At the heart of that dispute were documents that were filed in the discrimination litigation in the Superior Court of the District of Columbia, including the complaint, depositions, and the settlement agreement.

The circuit court (Harrington, J.) conducted a hearing on the pending motions on July 18, 2007, following which the court ruled from the bench:

THE COURT: I'm going to ask [Teresa] to provide [Anthony] with [a] copy of the complaint that was filed in the discrimination case and if there are witnesses who were deposed in the context of the discrimination case who appear on [Teresa's] pretrial statement to testify in the divorce case, that you provide copies of depositions that were taken of those witnesses.

I'm going to direct [Anthony] to sign the confidentiality agreement that's been proposed so that he can get a copy, which I've had the chance to review. It does allow it to be disclosed to experts in the context of this case, so they can certainly review it and then opine.

So, basically I'm going to direct that a hearing on the cross motions to compel[,] for sanctions and other relief was

held. I'm going to really direct, since you had such limited issues, and I don't think they ought to factor in to any final determination or sanctions or attorney's fees, that basically they are both denied to the extent that anything else was requested other than what the Court ordered.

* * *

THE COURT: The docket entry comprises the order. There isn't going to be anything in writing.

Subsequent to the July 18, 2007 hearing, Anthony filed an amended pre-trial statement seeking to present an expert witness to opine on the damage components of Teresa's discrimination suit settlement. Teresa moved to exclude Anthony's expert on the basis that time did not permit discovery. The court granted the motion, thus Anthony's expert's opinion was not before the trial court.[8]

At the trial on the merits (Greenberg, J.) on August 15 and 16, 2007, the question of the discrimination case documents again arose, with particular reference to the deposition of Teresa taken in that litigation. At the conclusion of direct examination of Teresa, and before cross-examination, the following discussion ensued:

[COUNSEL FOR ANTHONY]: And then also, Your Honor, I believe there's, she was deposed another day. I only got the deposition transcript for January 7th, 2004, but it continues. It says, "We're going to recess."

THE COURT: All right, so you haven't had time to review . . .

[COUNSEL]: I did review the one I got.

THE COURT: How much have you reviewed?

[COUNSEL]: I got through it.

THE COURT: Okay, you did.

[COUNSEL]: Yes. I received it at 2:30.

THE COURT: But is there something missing?

8. We suggest that, on remand, limited time for discovery alone would not bar the testimony of Anthony's expert witness.

[COUNSEL]: Yes. Well, first of all, the exhibits are missing. But then it says, "We're adjourned for today and it'll be resumed on another day." And my understanding is that it did resume.

THE COURT: Was there another day?

TERESA MURRAY: Yes, there is and I cannot locate that transcript.

[COUNSEL FOR TERESA]: Well, we'll do another search today, but we had everyone in our office go through all of the boxes. That was the one that they found. I don't think we made any—and I can represent to the Court that every effort was made. We certainly will look again to see if we locate it, but that was the only one that we found.

THE COURT: Well, you might have to resort to opposing counsel then if you're not able to get it, but if we're not able—I will keep the matter open—

[COUNSEL FOR TERESA]: Understood, Your Honor.

THE COURT:—until she's got it.

Neither the other transcript volume nor the deposition exhibits were ever produced to Anthony's counsel. Thereafter, the court did not again address the issue, despite the earlier ruling by Judge Harrington that those documents were to be provided to Anthony's counsel, pre-trial. On remand, the court must address the status of the parties' compliance with Judge Harrington's discovery order.

### 2. *Sale of the Marital Home*

During the marriage, the parties purchased a home. In its memorandum opinion, the trial court provided:

> The parties purchased the marital home in Silver Spring in December, 2001. They put down $25,000 as a down payment. The testimony indicated that $13,000 of that sum came from the proceeds of a personal injury settlement awarded to [Teresa], and the balance from the parties' savings. This testimony was not contradicted. As previ-

ously discussed, the property was sold, and the proceeds paid into the court registry.

The trial court, relative to those funds, ordered:

[T]he funds in the court registry shall be disbursed to the parties in this order: first, any funds owing for back child support, to [Teresa]; second, $13,000 to [Teresa], representing her portion of the down payment for the former marital home; third, one-half of the balance to be divided equally between the parties[.]

On appeal, Anthony challenges that disposition, first asserting that the record is devoid of evidence "regarding the date of the accident, the date of the settlement, or the damages the settlement funds were intended to replace." Inferentially, Anthony suggests that the court erred in awarding the first $13,000 of the registry funds to Teresa, rather than accounting for her assumed contribution in the monetary award.

Parenthetically, we pause to note that neither Anthony nor Teresa provide substance to their respective arguments on this issue. Anthony, in support of his assertion of insufficient evidence, refers us to no portion of the record to support his argument. Teresa, on the other hand, merely argues that the court did not err in making a less than equal disposition of property. Because the record is unclear as to the source of the $13,000, and the arguments of the parties are at best inchoate, we shall direct the court, on remand, to reconsider this issue as well.

We do observe, however, that the court erred in ordering payment of the $13,000 to Teresa before its equal division of the remaining property. *See Hart v. Hart,* 169 Md.App. 151, 164, 899 A.2d 965 (2006) (holding that a trial court cannot distribute proceeds from the sale of a marital home unequally). Of course, if the evidence warrants, the court may return Teresa's contribution through a monetary award.

Thus, we shall remand this matter to the circuit court for further proceedings which will, perforce, implicate the court's determination of the monetary award, child support, alimony, and attorney fees.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY VACATED;**

**CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION;**

**COSTS ASSESSED TO APPELLEE.**